**Dennis CHAMNESS, Appellant–Plaintiff,**

**v.**

**Samuel CARTER, John Carter and Joyce Manton, Appellees–Defendants.**

No. 34A02–9010–CV–587.[1]

Court of Appeals of Indiana, Fifth District.

July 23, 1991.

Daniel J. Harrigan, Bayliff Harrigan Cord & Maugans, P.C., Kokomo, for appellant-plaintiff.

Jeffrey M. Miller, Noel & Noel, Kokomo, for appellees-defendants.

BARTEAU, Judge.

The only issue presented for our review is whether a divorced non-custodial parent has standing to bring an action for the wrongful death of a minor child under Ind. Code 34–1–1–8. We hold that I.C. 34–1–1–8 confers standing upon a non-custodial parent and therefore reverse the trial court's grant of summary judgment in favor of appellee.

FACTS

Denise F. Chamness was the child of appellant Dennis Chamness and Joyce Manton. Her parents divorced on December 17, 1979 and her custody was awarded to her mother, Joyce Manton. Upon Denise's death at the age of fourteen, Dennis Chamness brought an action for her wrongful death pursuant to I.C. 34–1–1–8. His com-

---

1. This case has been diverted to this office by order of the Chief Judge.

plaint alleged that on January 19, 1990, while Denise was visiting the home of Samuel Carter, she was negligently shot and killed by Carter's son John. In the complaint, Chamness named the Carters as defendants and Denise's custodial mother, Joyce Manton, as a co-defendant to answer as to her interest. The Carters' motion for summary judgment, alleging lack of standing by a non-custodial parent, was granted. This appeal ensues.

### DISCUSSION

I.C. 34–1–1–8 provides in pertinent part as follows:

**Action for injury or death of child.**

... (b) An action may be maintained under this section against the person whose wrongful act or omission caused the injury or death of a child. The action may be maintained by:

(1) The father and mother jointly, or either of them by naming the other parent as a codefendant to answer as to his or her interest;

(2) In case of divorce or dissolution of marriage, the person to whom custody of a child was awarded; and

(3) A guardian, for the injury or death of a protected person.

(c) In case of death of the person to whom custody of a child was awarded, a personal representative shall be appointed to maintain the action for the injury or death of the child.

....

(h) Damages awarded under subsection (e)(1), (e)(2), (e)(3)(C) and (e)(3)(D) inure to the benefit of:

(1) The father and mother jointly if both parents had custody of the child;

(2) The custodial parent, or custodial grandparent, and the noncustodial parent of the deceased child as apportioned by the court according to their respective losses; or

(3) A custodial grandparent of the child if the child was not survived by a parent entitled to benefit under this section.

However, a parent or grandparent who abandoned a deceased child while the child was alive is not entitled to any recovery under this chapter.

Carters argue that the provisions of I.C. 34–1–1–8(b) are exclusive in nature and thus interpret subsection (b)(2) as limiting the right to maintain a cause of action for the wrongful injury or death of a child, when the parents are divorced, to the custodial parent. They suggest that subsection (b)(2) would be a virtual nullity if the statute was interpreted in the manner suggested by Chamness.

Chamness argues that the provisions are designed to be read conjunctively and broaden rather than limit the category of persons entitled to bring an action for a child's injury or death. He interprets I.C. 34–1–1–8(b)(1) to authorize both parents together, or either parent alone, whether married, unmarried or divorced, so long as they join the other parent, to bring an action for the wrongful death or injury of a child. He interprets I.C. 34–1–1–8(b)(2) to authorize a custodial parent, without joining the non-custodial parent, or a person other than a parent awarded custody of the child to bring a wrongful death or injury action. I.C. 34–1–1–8(b)(3) is interpreted to authorize the institution of an action by the guardian of a protected person.

In response to Carters' suggestion that this interpretation makes (b)(2) a nullity, Chamness points out (b)(2) reads "person" having custody rather than "parent" and also allows the custodial person or parent to bring the action alone, without joining non-custodial parents as co-defendants. He supports his interpretation of these provisions by reference to I.C. 34–1–1–8(h) which allows a non-custodial parent to recover damages occasioned by the wrongful death of a child. Subsection (h) is supportive of Chamness's interpretation in that it contemplates someone other than a parent having custody, and thus being in need of specific authorization to maintain an action. It also recognizes that a non-custodial parent may have suffered a loss and be entitled to a portion of the damages awarded due to the injury or death of a child.

Carters allege that subsection (c) supports their position in providing that a personal representative shall be appointed to maintain the action in the case of death of the person to whom custody of a child was awarded. They urge us to find this provision is indicative of the legislature's intent to deny standing to non-custodial parents. The case of *Stickler v. Mack* (1985), Ind. App., 473 N.E.2d 621 is cited as authority for this proposition. However, our reading of *Stickler* leads to the conclusion that it was decided not on the basis of the biological father being the non-custodial parent but rather on the basis that the child had been adopted by the step-father, thus severing the biological father's parental ties. The adoptive father was entitled to bring the action, not the biological father, who no longer enjoyed any legal relationship to the deceased child. Chamness interprets subsection (c) to mean that the personal representative of a deceased custodial parent is authorized to bring an action for injury or death of a child, but not to the exclusion of all others.

Because common law did not recognize an action for damages for wrongful death, I.C. 34-1-1-8, being in derogation of common law, must be strictly construed. *Thomas v. Eads* (1980), Ind.App., 400 N.E.2d 778. In reviewing a statute, the foremost objective is to determine and effect the intent of the legislature. *Spaulding v. International Bakers Services, Inc.*, (1990), Ind., 550 N.E.2d 307. Statutes are examined and interpreted as a whole, giving words their common and ordinary meaning and not overemphasizing strict, literal or selective reading of individual words. *Id.* The legislative intent as ascertained from an act as a whole prevails over the strict, literal meaning of any word or term used therein. *Park 100 Development Co. v. Indiana Dept. of State Revenue* (1981), Ind., 429 N.E.2d 220. Statutes are to be read as a whole. *City of Evansville v. International Ass'n of Fire Fighters, Local 357,* (1987), Ind., 516 N.E.2d 57. Where possible, every word in the statute must be given effect and meaning and no part is to be held meaningless if it can be reconciled with the rest of the statute.

Courts will adopt the interpretation of a statute which renders it constitutional and fully implements its provisions in matters of statutory construction. *Willis v. State* (1986), Ind.App., 492 N.E.2d 45.

We find Chamness's interpretation of I.C. 34-1-1-8 to be the more compelling. When looked at as a whole, the statute clearly intends that a non-custodial parent be entitled to compensation for the wrongful death or injury of their child. A strict construction of I.C. 34-1-1-8(b)(2) in the manner suggested by the Carters, and adopted by the trial court in its grant of summary judgment, not only unduly restricts but potentially destroys a non-custodial parent's ability to recover damages to which they are statutorily entitled. Moreover, we perceive that such an interpretation raises serious constitutional questions.

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." However, the promise of equal protection does not prohibit legislative classification and imposition of statutory restraints on one class which are not imposed upon another so long as the classifications are reasonable. *Decatur County Rural Electric Membership Corp. v. Public Service Co. of Indiana,* (1973), 261 Ind. 128, 301 N.E.2d 191. In order for a statutory classification "to satisfy the guarantee of equal protection, it 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.'" *Johnson v. St. Vincent Hospital, Inc.* (1980), 273 Ind. 374, 404 N.E.2d 585 (quoting *F.S. Royster Guano Co. v. Virginia* (1920), 253 U.S. 412, 40 S.Ct. 560, 64 L.Ed. 989).

An earlier version I.C. 34-1-1-8 which conditioned the right of a mother to maintain an action for the wrongful injury or death of her child upon contingencies of death, desertion or imprisonment of the father was held to be violative of both the State and Federal constitutions as a denial of equal protection because there was no

rational basis for the disparity in treatment of a mother and father. *Kinslow v. Cook* (1975), 165 Ind.App. 623, 333 N.E.2d 819. The argument "that the father should be the plaintiff because of his primary right to the child's services and his primary responsibility to support" the child was rejected and found insufficient to justify the distinction drawn in the statute. *Id.* The statute was also found constitutionally defective because it arbitrarily precluded the mother from being able to prove her rights and duties in relation to the child. *Id.* Similarly, the United States Supreme court determined that statutes prohibiting parents from maintaining actions for the wrongful death of their illegitimate children, and vice versa, were unconstitutional denials of equal protection because there was no rational basis for using illegitimacy to support disparate treatment. *Glona v. American Guarantee & Liability Ins. Co.* (1968), 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441; *Levy v. Louisiana* (1968), 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436. We find the same arbitrary distinction in the trial judge's interpretation of I.C. 34–1–1–8 precluding a non-custodial parent from bringing an action under the statute.

At issue here is the intention of the legislature in drafting a statute authorizing an action for the wrongful injury or death of a child. When parents divorce, the non-custodial parent losses only the right to custody of the child, not the love and companionship of the child nor the financial responsibility for the needs of the child. *See PARENTS ARE FOREVER*, Association of Family Conciliation Courts, Madison, Wisconsin. Both parents are liable for the medical and funeral bills of a child because of their common law, and in some instances statutory, duty to support and maintain their children. *Scott County School District 1 v. Asher* (1975), 263 Ind. 47, 324 N.E.2d 496. Six percent (6%) of the support amount computed under the child support guidelines now utilized in Indiana is for health care expenses of the child. Additionally, many divorce decrees specifically provide that non-custodial parents are responsible for maintaining health insurance and paying any uninsured medical expenses. The ruling below could conceivably force a non-custodial parent to bear the entire cost of extensive hospitalization and related medical expenses without any recourse simply because the custodial parent decided to forgo filing an action. The legal relationship between a child's parents is not an appropriate criterion for measuring the physical, mental, emotional and financial damage occasioned by the tragic death of a child. The apportionment of damages for loss of a child's services and a child's love and affection is a question of fact to be determined at trial or between the parents. There is no rational basis for denying a non-custodial parent standing to recover for loss occasioned by the injury or death of a child.

Carters present two additional arguments, one statutory and the other based in equity, as support for their contention that the trial court's grant of summary judgment should be upheld. They argue that Chamness was chronically behind in his child support and as a consequence should be deemed to have abandoned Denise and thus be prevented from sharing in damages pursuant to I.C. 34–1–1–8(h). They also cite maxims of equity to persuade us that because of Chamness's alleged support delinquency he should be barred from bringing a cause of action for his daughter's death.

In furtherance of their arguments that Chamness failed to support Denise and essentially abandoned her, Carters submitted docket sheet entries indicating that Chamness was cited for contempt several times because of child support arrearages. No entries appear on the docket sheets after November 14, 1986. This evidence, standing alone, neither establishes the existence of a child support arrearage at the time of Denise's death in 1990 nor establishes that Chamness's documented failures to keep the court ordered child support current were within his control. If Chamness refused to make any effort to support Denise, did not provide health insurance nor pay any uncovered medical bills and did not pay the funeral bills then he may well not be entitled to any recovery arising out of her death. I.C. 34–1–1–8(h)(2) provides

that damages inure to the benefit of the custodial and non-custodial parent according to their respective losses. If Chamness or another parent, whether custodial or non-custodial, were unable to establish any loss, they would not be entitled to recover damages. This type of argument goes to the merits of the claim that a parent is entitled to recovery and thus should be decided in a court of law on the facts and not by a preliminary determination denying standing.

We interpret I.C. 34–1–1–8 to permit non-custodial parents standing to bring an action for the wrongful death of a child. Subsection (b)(1) allows the father and mother jointly or severally to maintain an action. If the father or mother brings the action individually, they are required to join the other parent as a co-defendant. Chamness was Denise's father. As her father he was entitled to maintain an action for her wrongful death, but was required to join her mother as a co-defendant. This he did. Consequently, the trial court's determination that Chamness had no standing to maintain an action for the wrongful death of his daughter was erroneous.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

RATLIFF, C.J., and RUCKER, J., concur.