Brenda KING, Appellant–Defendant,

v.

Kenneth J. KING, Appellee–Plaintiff,

and

Contractors United, Inc., Appellee–Defendants.

No. 30A05–9206–CV–187.

Court of Appeals of Indiana, First District.

March 4, 1993.

Rehearing Denied May 20, 1993.

Jon R. Pactor, Indianapolis, for appellant-defendant.

Mary Jo Hunter Wedding, Peter A. Schroeder, Norris, Choplin & Schroeder, Indianapolis, for appellee-plaintiff.

BAKER, Judge.

Defendant-appellant Brenda King appeals the trial court's denial of her Ind. Trial Rule 60(B) motion seeking relief from judgment. The judgment from which Brenda sought relief was an order dismissing plaintiff Kenneth J. King's wrongful death claim against herself and defendant-appellee Contractors United, Inc. We must determine whether the trial court's denial amounts to an abuse of discretion.

## FACTS

Brenda and Kenneth's marriage was dissolved in 1979. Kenneth was awarded custody of the two children, Andrew, then age nine, and a younger daughter. On October 13, 1988, Andrew died when the motorcycle he was riding collided with a truck owned by Contractors United, Inc. Andrew was nineteen at the time.

Kenneth filed a complaint for wrongful death on October 21, 1988. He named both Contractors United and Brenda as defendants: Contractors United to answer his allegation of negligence, and Brenda "to answer as to her interest" as a non-custodial parent.[1] *Record* at 6.

Shortly thereafter, both defendants' attorneys entered their appearances. Brenda had a falling out with her attorney, however, causing him to withdraw his appearance in March 1990. The trial court's notice to Brenda to that effect was returned unopened and stamped to indicate that Brenda had moved and left no forwarding address.

On October 16, 1990, two years and three days after Andrew's death, Russell Johnson, evidently Brenda's new attorney,[2] filed Brenda's answer to Kenneth's complaint. Brenda's answer claimed that as Andrew's mother, "she should be made a co-plaintiff in this cause of action and relieved of her status as co-defendant." *Record* at 8. Although the answer was captioned correctly, it listed an incorrect cause number, which may explain why the trial court's "case history list" does not reflect the answer's existence and why the trial court never acted on Brenda's request. Both Kenneth and Contractors United denied having received Brenda's answer.

In May 1991, Kenneth and Contractors United settled their dispute concerning Andrew's death, and they notified the trial court that they had done so. They filed a motion asking the trial court "to dismiss the entire action against all defendants pursuant to [Ind.] Trial Rule 41(A)(2), with prejudice." *Record* at 13. Kenneth's certificate of service did not purport to send a copy of the motion to Brenda, and Brenda denies having ever received notice of the motion.

On July 29, 1991, the trial court granted Kenneth's motion to dismiss with prejudice. The trial court's notice to Brenda of that dismissal was returned to the trial court unopened. *Supplemental Record* at 13. From all appearances, it seems the post office returned the correspondence because the court clerk simply forgot to address the envelope, as strange as that may seem.[3]

On September 11, 1991, Russell Johnson filed an appearance under the correct cause number and again asked that the trial court align Brenda as a co-plaintiff in Kenneth's complaint. Johnson evidently was unaware Kenneth's complaint had been dismissed several weeks earlier.

On January 21, 1992, Brenda's third attorney, Jon Pactor, filed a T.R. 60(B) motion for relief from judgment,[4] which was denied. Brenda appeals.

## DISCUSSION AND DECISION

■ We employ an abuse of discretion standard when reviewing the grant or denial of a T.R. 60(B) motion. *Chelovich v. Ruff & Silvian Agency* (1990), Ind.App.,

1. A wrongful death action may be maintained by:
   (1) the father and mother jointly, or either of them by naming the other parent to answer as to his or her interest;
   (2) in case of divorce or dissolution of marriage, the person to whom custody of the child was awarded; and
   (3) a guardian, for the injury or death of a protected person.
   IND.CODE 34–1–1–8(b).

2. The record contains no indication Johnson entered an appearance until September 11, 1991.

3. In all, six copies of envelopes containing correspondence from the trial court and meant for Brenda appear in the record. Of these, only the first (Brenda's first attorney's motion to withdraw) and the last (Brenda's second attorney's motion to withdraw) were actually addressed to Brenda. The first was returned on the grounds that Brenda had moved and left no forwarding address. The last, which gave the same address as the first, was returned on the grounds that no such address existed. The other four envelopes all conspicuously lack an indication of to whom the contents of the envelopes were to be sent—in other words, the envelopes had no name, no street address, no city, no zip code. All were stamped "no such number" and returned to the trial court. *Record* at 9–14. We can offer no explanation.

4. Although Brenda's motion, entitled "Motion for Relief from Judgment and Request for Hearing," does not specifically mention T.R. 60, the memorandum of law included with the motion makes it clear Brenda meant her request to operate under T.R. 60(B).

551 N.E.2d 890, 892. "An abuse of discretion occurs when the trial court's judgment is clearly against the logic and effect of the facts and inferences supporting the judgment for relief." *Id.* Additionally, because T.R. 60(B) relief is essentially equitable in nature, the trial court must balance the alleged injustice suffered by the party moving for relief against the interests of the winning party and society in general in the finality of litigation. *Id.*

T.R. 60(B) exists primarily as the avenue of redress for defendants defaulted under Ind.Trial Rule 55 and for plaintiffs (or would-be plaintiffs) who were dismissed pursuant to T.R. 41. *Moore v. Terre Haute First Nat'l Bank* (1991), Ind.App., 582 N.E.2d 474, 476. The T.R. 60(B) movant bears the burden of establishing the existence of grounds for relief, whether those grounds be mistake, excusable neglect, fraud, newly discovered evidence, or the like. *Chelovich, supra,* at 892.

■ In addition to establishing valid grounds for relief, the T.R. 60(B) movant seeking relief from a T.R. 55 default or from a T.R. 41 dismissal ordinarily must also establish a meritorious defense or claim, respectively, meaning "a *prima facie* showing that a different result would be reached if the case were tried on its merits." [5] *Moore, supra,* at 476–77. The reason for requiring a meritorious defense or claim, of course, is to prevent the waste of time and resources, for without the possibility of a different result, further litigation would be a "vain and useless thing...." *Cantwell v. Cantwell* (1957), 237 Ind. 168, 178, 143 N.E.2d 275, 280, *cert. denied,* 356 U.S. 225, 78 S.Ct. 700, 2 L.Ed.2d 712. The meritorious defense or claim requirement is not absolute, however. "If a judgment is void, whether from faulty process or otherwise, a T.R. 60(B) claimant need not show a meritorious defense or claim." *Moore, supra,* at 477 (citing *Morrison v. Professional Billing Serv., Inc.* (1990), Ind.App., 559 N.E.2d 366).

Brenda stridently insists the dismissal was wrongful because she received no notice of the settlement, the motion to dismiss, and the order dismissing Kenneth's claim. Characterizing the lack of notice as a "blatant," "flagrant," "deplorable," and "glaring" denial of due process, Brenda concludes that "[i]n short, this is one of the most flagrant examples of lack of due process in recent jurisprudence." *Brief of Appellant* at 6, 7, 13; *Reply Brief of Appellant* at 1. While we consider Brenda's latter claim to be hyperbolic, we acknowledge the experience which prompted it. As Justice Jackson remarked, "[w]hen notice is a person's due, process which is pure gesture is not due process." *Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 874.

If notice is not a person's due, however, it follows that there is no need to consider the particular adequacy of the notice in question. This is the case here. Notice was not Brenda's due because she failed to timely express an interest in the proceedings in general and in the possible damage award in particular. In short, she made no appearance.

■ "Generally, to constitute an appearance, there must be some overt act done or word spoken in court, such as by formal entry or motion." 3 *I.L.E. Appearance* § 3 (1978). It may be effected by any act by which a person recognizes the case as being in court, such as by filing an answer. *Id.* A party who has entered an appearance is entitled to notice of the proceedings and service of most orders, pleadings, motions, and briefs, among others. Ind.Trial Rule 5.

■ Andrew died on October 13, 1988. Brenda was named as a defendant when Kenneth filed his wrongful death claim on October 21, 1988. Although Brenda originally retained an attorney, that attorney withdrew the appearance in March of 1990. "It is well-settled that after the withdrawal of the general appearance, the case stands

---

5. As we noted in *Moore, supra,* at 477 n. 4, "[i]n the T.R. 41 context, a 'meritorious defense' is actually a 'meritorious claim'[.]" Because Bren-

da has sought to recover from a defendant, we will refer to her attempt as a "claim."

as if there had been no appearance." *Stewart v. Hicks* (1979), 182 Ind.App. 308, 312, 395 N.E.2d 308, 312. A party who makes no appearance is not entitled to notice of the proceedings. *See* Ind.Trial Rule 5(A) ("[n]o service need be made on parties in default for failure to appear ..."); *Stewart, supra,* at 312, 395 N.E.2d at 311 (in Ind.Trial Rule 55 context, "... where former counsel has withdrawn and the record is devoid of any appearance by the unrepresented party or a new attorney, notice of the hearing on default *need not be sent to that party*") (original emphasis).

In the months following the withdrawal, Brenda did not enter a *pro se* appearance, did not cause a new attorney to act on her behalf, did not answer Kenneth's complaint, and did not assert an interest in any possible wrongful death proceeds. Prior to filing her answer, Brenda performed no overt act recognizing the case's status. She entered no appearance. Therefore, she was not entitled to the notice she finds so flagrantly lacking.

■ On October 16, 1990, the day Brenda finally asserted her interest in any damages that might be recovered, Brenda again became entitled to notice under T.R. 5; the filing of an answer has long acted as the entry of an appearance. *State ex rel. Dean v. Tipton Circuit Court* (1962), 242 Ind. 642, 181 N.E.2d 230. By October 16, 1990, however, it was too late, given Andrew's October 13, 1988 death. The two-year statute of limitations period imposed by IND.CODE 34-1-1-2 had expired three days earlier.

Brenda seeks to avoid the statute of limitations issue by concluding that because Kenneth filed his claim within the two year period and because Kenneth named her in that claim, Brenda must also be considered as having timely asserted a claim. We are not persuaded. Even assuming Brenda's request to align herself as a plaintiff was the legal equivalent of asserting a claim of her own, the fact remains Brenda did nothing even remotely suggesting she wished to share in any damages until three days after the limitation period passed. We know of no authority supporting the bald

proposition that a parent or guardian automatically asserts a wrongful death claim merely by being named a defendant, and Brenda offers no authority for the assertion.

Neither are we persuaded by Brenda's wholly unsupported submissions that this outcome is changed by IND.CODE 34-1-1-8(h), which requires the trial court to apportion between the parents certain specified damages recovered from a wrongful death action or by the fact that the statute does not facially require an answer to a wrongful death claim. Neither of these propositions relieves a party wishing to assert either a wrongful death claim or an interest in any proceeds recovered from actually asserting the appropriate pleading in the first instance and in a timely fashion.

■ The only way Brenda could prevail is if her misfiled answer could be deemed to have "related back" to Kenneth's timely-filed claim. Again, however, we find no authority supporting the proposition, and again, Brenda offers none. Neither do we find a compelling rationale to adopt such a rule in this case or ones like it. We note that under traditional relation-back analysis, a party's latter pleading or amendment is examined to determine the degree to which it is logically or equitably connected to a document the party had filed earlier. *See e.g., Eberbach v. McNabney* (1980), Ind.App., 413 N.E.2d 958; *Gibson v. Miami Valley Milk Producers, Inc.* (1973), 157 Ind.App. 218, 299 N.E.2d 631. Here, of course, Brenda filed nothing prior to the expiration of the limitation period.

■ Brenda cannot possibly demonstrate that she has been harmed by the trial court's resolution of her T.R. 60(B) motion. Even if she was wrongfully deprived of notice, as she claims, we note that error of constitutional dimension does not require reversal if it is clear that no harm arises from the error. *Chapman v. California* (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; *Hester v. State* (1990), Ind.App., 551 N.E.2d 1187. Normally, a party's successful T.R. 60(B) motion results in the party being returned to the position the party would have occupied had no error occurred.

*See Moore, supra,* at 479. In this case, returning Brenda to the position she would have been in had the trial court granted her T.R. 60(B) motion would be a vain and useless thing, because that position still loses on statute of limitations grounds.[6]

The legislature's approach to maintaining actions for the wrongful death of children is practical. IND.CODE 34–1–1–8(b), which prescribes those who may maintain the action, encompasses the range of possibilities. If the child's parents are still married, subsection (b)(1) gives a cause of action to both parents jointly or either of them individually, so long as the other is named to answer as to his or her interest. If the child's parents are no longer married, subsection (b)(2) gives a cause of action to the custodial parent. If the child has a guardian, subsection (b)(3) gives a cause of action to the guardian. Under IND.CODE 34–1–1–8(h), certain specified damages received as a result of the wrongful death action inure to both the custodial and non-custodial parent.

By giving the right to maintain the wrongful death action to the custodial parent, the statute avoids the acrimony and complexity that may well arise if both divorced parents were given the right to maintain independent wrongful death actions. At the same time, the statute recognizes the fact that the non-custodial parent may also have suffered compensable losses by allowing the trial court to apportion the damages recovered from the action between both custodial and non-custodial parents. Were it otherwise, a potentially liable defendant would have that much less incentive to settle, and the sound policy of just, speedy, and inexpensive determinations of all actions would be hindered. That a non-custodial parent must still timely assert his or her interest in any damages in order to avail himself or herself of those damages is neither unduly burdensome nor inconsistent with the statutory scheme and standard rules of pleading and practice.[7]

Finally, we wish to emphasize that our holding today, that a non-custodial parent must timely and affirmatively assert his or her interest in a share of any wrongful death of child damages recovered, must necessarily be limited to those situations in which the non-custodial parent has been given notice of the custodial parent's wrongful death claim. We have no occasion to address the situations in which the custodial parent maintains a wrongful death of child action but does not inform the non-custodial parent of the action's existence or in which the custodial parent does not file suit in the first instance.[8]

The trial court's refusal to grant Brenda relief from the judgment dismissing Kenneth's claim was correct, and was therefore

---

6. Even if Brenda had timely filed a wrongful death claim, it is doubtful her recovery would have been significant. A parent unable to establish loss is not entitled to recover damages. *Chamness v. Carter* (1991), Ind.App., 575 N.E.2d 317, 320–21 ("If Chamness refused to make any effort to support [his deceased daughter], did not provide health insurance not pay any uncovered medical bills and did not pay the funeral bills then he may well not be entitled to any recovery arising out of [his daughter's] death"). Here, the record suggests Brenda "abandoned her marriage and her two minor children" in 1978 and contributed nothing to the cost of Andrew's burial expenses. *Record* at 18. Brenda's recovery would also be hampered by IND. CODE 34–1–1–8(f)(1), which limits wrongful death damages to the period between the death of the child and the time the child would have reached twenty years of age (or twenty-three, if the child was enrolled in an institution of higher education or in a vocational school or program). As we have mentioned, Andrew was nineteen when he died.

7. Although *Chamness, supra,* holds a non-custodial parent does, in fact, have standing to maintain an action for the wrongful death of a child, it also acknowledges that "[w]hen parents divorce, the non-custodial parent losses [sic] only the right to custody of the child, not the love and companionship of the child nor the financial responsibility for the needs of the child." *Id.* at 320.

8. Because we are convinced the legislature intended that only one wrongful death of child action be maintained, it follows that a custodial parent who chooses to bring an action must name the non-custodial parent as a necessary party under Ind.Trial Rule 19(A), despite the fact that IND.CODE 34–1–1–8(b) does not seem to require it. If the custodial parent fails to bring suit in the first instance, the non-custodial parent may well be able to maintain the action as a guardian under IND.CODE 34–1–1–8(b)(3).

no abuse of discretion, because Brenda was legally barred from recovering damages. Accordingly, we affirm the judgment.

Affirmed.

ROBERTSON and SHIELDS, JJ., concur.