Charles E. HERRIMAN and Johnny
Sue Herriman, Plaintiffs,

v.

CONRAIL, INC., and Consolidated
Rail Corporation, Defendants.

No. 1:94–CV–232.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Feb. 24, 1995.

Gene M. Jones, Martin W. Kus, Newby Lewis Kaminski and Jones, LaPorte, IN, for plaintiffs.

Bruce A. Hugon, Victor L. Frost, II, Andrew W. Swain, Cindy E. Shively, Frost and Hugon, Indianapolis, IN, for defendants.

### *MEMORANDUM OF DECISION AND ORDER*

COSBEY, United States Magistrate Judge.

## I. INTRODUCTION

This case, involving the alleged wrongful death of Kurt A. Herriman ("Kurt") is before the Court [1] on two motions for partial sum-

---

1. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

mary judgment: one filed by his parents, the Plaintiffs, Charles E. Herriman and Johnny Sue Herriman ("Plaintiffs"); and one by Defendants Conrail, Inc. and Consolidated Rail Corporation ("Defendants"). Both sides have filed response briefs and reply briefs, and the relevant undisputed facts, as recounted in section II of this order, can be succinctly stated.

This Court has jurisdiction by virtue of diversity of citizenship. 28 U.S.C. § 1332.

## II. FACTUAL BACKGROUND, QUESTION PRESENTED, AND ARGUMENTS OF THE PARTIES

Kurt died unmarried and without dependents at the age of nineteen (19) as a result of a railroad grade crossing collision in August of 1992. *See* Plaintiffs' complaint rhetorical ¶¶ 20–21.

The Plaintiffs contend that it was the Defendants negligence that caused the death of their son, and that as further result, they have lost his love, companionship, and his services for the rest of their lives.[2] *See* Plaintiffs' complaint rhetorical ¶ 22.

The focus of the current motion is not on the issue of whether the Plaintiffs have a right to claim such damages under Indiana's Child Wrongful Death Act ("the Act"), Indiana Code section 34–1–1–8, because since the Act was amended in 1987 to add subsections (e)(1) and (e)(2) they clearly do; rather, the respective motions focus upon subsections (f) and (g) (both also added in 1987) and the time period for which those damages may be recovered under the Act. At the time of Kurt's death, the Act read as follows:

(a) As used in this section, "child" means an unmarried individual without dependents who is:

(1) less than twenty (20) years of age; or

(2) less than twenty-three (23) years of age and is enrolled in an institution of higher education or in a vocational school or program.

(b) An action may be maintained under this section against the person whose wrongful act or omission caused the injury or death of a child. The action may be maintained by:

(1) the father or mother jointly, or either of them by naming the other parent as a codefendant to answer as to his or her interest;

(2) in case of divorce or dissolution of marriage, the person to whom custody of the child was awarded; and

(3) a guardian, for the injury or death of a protected person.

(c) In case of death of the person to whom custody of a child was awarded, a personal representative shall be appointed to maintain the action for the injury or death of the child.

(d) In an action brought by a guardian for an injury to a protected person, the damages inure to the benefit of the protected person.

(e) In an action to recover for the death of a child, the plaintiff may recover damages:

(1) for the loss of the child's services;

(2) for the loss of the child's love and companionship; and

(3) to pay the expenses of

(A) health care and hospitalization necessitated by the wrongful act or omission that caused the child's death;

(B) the child's funeral and burial;

(C) the reasonable expense of psychiatric and psychological counseling incurred by a surviving parent or minor sibling of the child that is required because of the death of the child;

(D) uninsured debts of the child, including debts for which a parents is obligated on behalf of the child; and

(E) the administration of the child's estate, including reasonable attorney's fees.

(f) Damages may be awarded under this section only with respect to the period of time from the death of the child until:

(1) the date that the child would have reached:

(A) twenty (20) years of age; or

---

**2.** The Plaintiffs are in their early 50's.

(B) twenty-three (23) years of age, if the child was enrolled in an institution of higher education or in a vocational school or program; or

(2) the date of the child's last surviving parent's death; whichever first occurs.

(g) Damages may be awarded under subsection (e)(2) only with respect to the period of time from the death of the child's last surviving parent's death.

(h) Damages awarded under subsection (e)(1), (e)(2), (e)(3)(C), and (e)(3)(D) inure to the benefit of:

(1) the father and mother jointly if both parents had custody of the child;

(2) the custodial parent, or custodial grandparent, and the noncustodial parent of the deceased child as apportioned by the court according to their respective losses; or

(3) a custodial grandparent of the child if the child was not survived by a parent entitled to benefit under this section.

However, a parent or grandparent who abandoned a deceased child while the child was alive is not entitled to any recovery under this chapter.

Simply stated, the Defendants assert that damages for the loss of love and companionship of a child are only available under the Act until the child would have reached the age of twenty, or at the latest, twenty-three, Ind.Code section 34–1–1–8(f)(1)(A)(B); on the other hand, the Plaintiffs argue that subsection (g) of the Act declares that such damages are available until the death of the child's last surviving parent. Under the facts of this case, the difference between these two poles could be significant: a period of one to four years, matched up against the remaining life expectancy of Kurt's parents—a period of roughly twenty years. *See* Burns Indiana Statutes (TABLES) pp. 1408–9.

More particularly, but to oversimplify, the Defendant argues that subsections (f) and (g) of the Act, are inherently ambiguous and that to follow the Plaintiffs' reading would lead to absurd and unintended results, as well as being counter to the historical evolution of pecuniary damages for the loss of a child under Indiana law. The Defendants bolster this argument by referring to the current formulation of Indiana's Pattern Jury Instructions which purport to enunciate the allowable damages for the loss of a child. *See* INDIANA PATTERN JURY INSTRUCTIONS § 11.05; § 11.81.[3] In other words, the Defendants view the last major amendment to the Act in 1987, discussed more fully *infra*, as merely codifying Indiana's long standing

3. **Instruction No. 11.05. Comparative Fault—Wrongful Death—Death of a Child**

If you find from a preponderance of all the evidence that [*name defendant(s)*] is [are] liable to [*name parents(s)*], you must then determine the total amount of money that would fairly compensate [*name parents(s)*] for the pecuniary loss [he] suffered due to the wrongful death of [*name child*].

In determining this amount of money, you may consider the following elements:
[*Here insert the proper elements of damages.*]
(*See* Instruction No. 11.81 below)
[*name child*] [*name parent or parents*] or a nonparty was at fault in causing the damages claimed.

You are to determine whether these elements of damage have been proved by a preponderance of the evidence relating to damages. Your determination must be based on that evidence and not on guess or speculation.

**Instruction No. 11.81. Loss of Services, Love and Companionship.**
The value of the following:
(1) The loss of [*name child's*] services;

(2) The loss of [*name child's*] love and companionship;
(3) The reasonable expense of health care and hospitalization necessitated by [*name child's*] death;
(4) The reasonable expense of [*name child's*] funeral and burial;
(5) The reasonable expense of psychiatric and psychological counseling incurred by [*name surviving parent(s) and name siblings*] that is required by the death of [*name child*];
(6) The amount of [*name child's*] uninsured debts, including debts for which [*name parents(s)*] [is] [are] obligated on [*name child's*] behalf; and
(7) The costs of administering [*name child's*] estate, including reasonable attorney's fees.

In awarding damages, you should only consider the period of time from [*name child's*] death until he/she would have reached twenty-one years of age, or twenty-three years of age if [*name child*] was enrolled in an institution of higher education or a vocational school or program, or the date of [*name child's*] last surviving parent's death, whichever occurs first.

common law notion that any and all damages that are recoverable for the wrongful death of a child accrue only for what would have been the balance of the child's minority.

On the other hand, the Plaintiffs argue that the amended Act is not ambiguous at all, but rather was the Legislature's responsive effort in 1987 to broaden a rather pinched and antiquated notion, that damages for the lost love and companionship of a child were not recoverable—an archaic attitude that up to that point had been a part of Indiana's jurisprudence for well over a century. As the Plaintiffs see it, by reason of the Legislature's action, these damages are now allowed in addition to traditional pecuniary damages and the only temporal measuring stick is the life (or established life expectancies) of the affected parents.

In response, the Defendants argue that Indiana has long treated intangible damages, such as the loss of the love and companionship of a child, as part of pecuniary damages, and that as a result, these elements should be subject to the temporal limitations that have traditionally been imposed in this state for the recovery of pecuniary damages. Thus, historically viewed, the Defendants suggest that the parents recovery for such damages has been limited to the period ending on the date that the child would have reached his majority, or the date of the last surviving parent's death, whichever comes first. The Defendants also argue that while the Act has the facial appearance of inconsistency, it can be harmonized with its other provisions, particularly in regard to those damages which are recoverable for the injury to a child. Moreover, the Defendants argue that the Plaintiffs' interpretation of the statute fails to effectuate clear legislative intent, and would also violate the right to equal protection in that it treats custodial grandparents differently than parents for the loss of a child's love and companionship. Finally, the Defendants argue that legitimate policy considerations exist which justify limiting the recovery of the loss of love and companionship to only a child's minority.

In response, the Plaintiffs argue that simply because portions of the Act do not follow the historical context of awards for the pecuniary losses for the death of a child, that does not mean that the clear language of the statute should be judicially excised. Rather, the Plaintiffs argue that even if the statute is deemed ambiguous, traditional statutory interpretation illustrates that what the Legislature sought to accomplish in 1987 was to unchain this new damages remedy, arising from lost love and companionship, from the traditional parameters that governed pecuniary losses. After all, the Plaintiffs argue, subsection (g) of the Act is presumably there for some reason, and since it can be logically reconciled with the remaining portions of the Act, it should be given full effect.

## III. SUMMARY JUDGMENT PRINCIPLES

■■■ Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago,* 916 F.2d 1254, 1256 (7th Cir. 1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512; *In re Matter of Wildman,* 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan,* 847 F.2d 368, 374

(7th Cir.1988); *Valentine v. Joliet Township High School District No. 204*, 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir.1992) (quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

 Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact", *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt*, 862 F.2d 646, 649 (7th Cir.1988); *Guenin v. Sendra Corp.*, 700 F.Supp. 973, 974 (N.D.Ind.1988); *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the nonmoving party, and does not weigh the evidence or the credibility of witnesses. *Anderson*, 477 U.S. at 249–251, 106 S.Ct. at 2511. However, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank*, 704 F.2d 361, 367 (7th Cir.1983).

 Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Id.* 477 U.S. at 248, 106 S.Ct. at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356; *First National Bank of Cicero v. Lewco Securities Corp.*, 860 F.2d 1407, 1411 (7th Cir.1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252, 106 S.Ct. at 2512.

## IV. DISCUSSION

This case presents to the Court a question of first impression in the State of Indiana: what does Indiana Code section 34–1–1–8(g) mean, and does it have any temporal reach at all given what Indiana Code section 34–1–1–8(f) imposes? In *Chamness v. Carter*, 575 N.E.2d 317, 319 (Ind.App.1991) the Indiana Court of Appeals, in construing another provision of the Act, offered a useful general predicate for statutory interpretation:

Because the common law did not recognize an action for damages for wrongful death, I.C. 34–1–1–8, being in derogation of common law, must be strictly construed. *Thomas v. Eads* (1980), Ind.App., 400 N.E.2d 778. In reviewing a statute, the foremost objective is to determine and effect the intent of the Legislature. *Spaulding v. International Bakers Services, Inc.*, (1990), Ind., 550 N.E.2d 307. Statutes are examined and interpreted as a whole, giving words their common and ordinary meaning and not overemphasizing strict, literal or selective reading of individual words. *Id.* The legislative intent as ascertained from an act as a whole prevails over the strict, literal meaning of any word or term used therein. *Park 100 Development Co. v. Indiana Dept. of State Revenue* (1981), Ind., 429 N.E.2d 220. Statutes are to be read as a whole. *City of Evansville v. International Ass'n of Fire Fighters, Local 357*, (1987), Ind., 516 N.E.2d 57. Where possible, every word in the statute must be given effect and meaning and no part is to be held meaningless if it can be

reconciled with the rest of the statute. Courts will adopt the interpretation of a statute which renders it constitutional and fully implements its provisions in matters of statutory construction. *Willis v. State* (1986), Ind.App. 492 N.E.2d 45.

In construing a statute to ascertain the intent of the Legislature the Court should consider the object or purpose of the statute and the evils and mischiefs sought to be remedied. 26 I.L.E. *Statutes* § 114 (1960); 73 Am.Jur.2d *Statutes* 157 (1974). Thus, the Court should consider the occasion and necessity for the law, the causes which induced its enactment, as well as the remedy to be afforded and the benefits to be derived. *Id.* In general, courts may not strike or read anything out of a statute; indeed, to the contrary, significance and effect should, if possible, be afforded to every word, phrase, sentence and part of the Act. 73 AM.JUR.2d *Statute* 200 (1974).

Even if parts of a statute are in apparent conflict, an effort must be made to reconcile them so as to sustain the Act, and to carry out its purpose, and a construction must be adopted which renders all parts harmonious. 26 I.L.E. STATUTES § 123 (1960).

The cornerstone of the Defendants' argument is that the 1987 Amendments to the Act merely added another element of damages for the wrongful death of a child, but that a central principle remained unaltered: only pecuniary damages are recoverable in the State of Indiana for such a loss. *See* Defendants' brief in opposition, pp. 1–4. From such a proposition it follows, as the Defendants see it, that under Indiana's traditional view of pecuniary damages, the losses sustained by the parents (including lost love and companionship) are limited to the period of the child's minority. *Id.* (citing *Wiersma Trucking Co. v. Pfaff,* 643 N.E.2d 909, 912 (Ind.App.1994)).

Indeed, the current status of the law, as expressed in DAN B. DOBBS LAW OF REMEDIES § 8.3(5) p. 441 (2d ed.1993) is that:

> Most jurisdictions now recognize the "consortium" recovery for lost companionship, society, love, advice and guidance, either

because those elements are considered "pecuniary loss," or because the statute specifically permits their recovery, or because the court has judicially discarded the "pecuniary loss" limitation.

Indiana seems to have adopted a different approach to the same end—that is, it was the 1987 Indiana Legislature, not the courts, that amended the pecuniary loss rule so as to allow for the lost love and companionship of a child. Of course, if any change was to come, it had to come from the Legislature, given the Indiana Supreme Court's position as expressed in *Miller v. Mayberry,* 506 N.E.2d 7, 11 (Ind.1987): "[t]he Legislature has the power to *change [the pecuniary loss rule]* if it disagrees with the Court's constructions of its legislative enactments or feels that there is a need to *change that rule* based on the needs and requirements of society." (emphasis added) *Id.* At any rate, since *Miller,* Indiana case law does not suggest that the pecuniary loss rule has been "discarded." DAN B. DOBBS § 8.3(5) p. 441 (2d ed.1993). Rather, to the contrary, it would appear that the courts of the State of Indiana continue to adhere to the view that the pecuniary loss rule has been merely changed (i.e., Ind.Code § 34–1–1–8(e)(2)) to now allow damages "for the loss of the child's love and companionship."

A clear example of such a reading is contained in Indiana's Civil Pattern Jury Instructions drafted with the "apparent approval," *Cochrane v. Lovett,* 166 Ind.App. 684, 337 N.E.2d 565, 570, fn. 6 (1975), or with the tacit approval of the Indiana Supreme Court, *Hobbs v. Tierney,* 495 N.E.2d 217, 220 (Ind. App.1986). Significantly, those instructions describe one of the "pecuniary" losses that a parent may recover for the wrongful death of a child as the loss of a child's love and companionship. *See* fn. 3, *supra.*

Moreover, in the recent *Wiersma* case, the Indiana Court of Appeals, after noting the Legislature's amendment to the Act in 1987, observed that: "[a]n action under the [Act] is based upon the pecuniary loss a parent suffers from the death of a minor child and is viewed in the law as a property right." 643 N.E.2d at 912 (citing *Siebeking v. Ford,* 128 Ind.App. 475, 148

N.E.2d 194, 206 (1958). One of the interesting factors in *Wiersma* is that it was brought under Indiana's Wrongful Death Statute, Indiana Code section 34–1–1–2, by the mother of a twenty year old child who had been killed in an automobile accident. The issue was whether the child's disabled mother, as a dependent next of kin, could maintain an action for the loss of the love, care and affection of her twenty year old daughter. *Id.* at p. 910.[4] The thrust in *Wiersma* highlights that the Act here has to be viewed differently than Indiana's Wrongful Death Statute, Indiana Code section 34–1–1–2 since the former is grounded upon a property right, whereas the latter focuses upon the pecuniary interest in the life of the decedent. *Id.* at 912. Nonetheless, *Wiersma* clearly shows that in either instance "pecuniary loss is the foundation of a wrongful death action, and the damages are limited to the pecuniary loss suffered by those for whose benefit the action may be maintained." *Id.* at 911 (citing *Southlake Limousine and Coach, Inc. v. Brock*, 578 N.E.2d 677, 679 (Ind.App.1991) *trans. denied*). Moreover, *Wiersma* also clearly stands for the proposition that inclusive of pecuniary damages is lost love, care and affection. *Id.* at 912.

Therefore, simply stated, a proper view of Indiana law is that the pecuniary loss rule, up until *Miller*, worked to exclude damages for the lost love and companionship of a deceased minor child; but that the rule has now been legislatively amended so as to encompass such damages. This posture is not unusual; indeed, "[i]t is significant that several of the jurisdictions technically bound by the pecuniary loss rule nevertheless allow recovery of the 'pecuniary value' of the decedent's society, [and] companionship, . . . as an element of compensable pecuniary injury." 1 STUART M. SPEISER, CHARLES P. KRAUSE, JUANITA M. MADDE, RECOVERY FOR WRONGFUL DEATH AND INJURY § 3:50, p. 235 (1992); *see also, id.* at § 4:22 p. 141; 22A AM.JUR.2d *Death,* § 253.

■■■ Thus, the question becomes: what is the legal import of the amended pecuniary

loss rule to this case? Once again, the same authorities yield the answer. First, the Indiana *Civil Pattern Jury Instructions*, fn. 3, *supra*, clearly adopt the language of Indiana Code section 34–1–1–8(f) and limit the damages (at least for purposes of our case here) to the period of time from Kurt's death until such time as he would have reached twenty years of age, or perhaps twenty-three.

This reading is also consistent with the *Wiersma* court's view that a parent is only entitled to recover for pecuniary injuries; "the proper measure being the value of the child's services from the time of injury until the child would have obtained majority." 643 N.E.2d at 912 (citing *Siebeking*, 148 N.E.2d at 207). This, of course, has typically been the view in Indiana. *Hahn v. Moore*, 127 Ind.App. 149, 133 N.E.2d 900, 904 (1956); *Boland v. Greer*, 409 N.E.2d 1116, 1118 (Ind. App.1980).

Finally, in the case of *King v. King*, 610 N.E.2d 259, 264, fn. 6 (Ind.App.1993) the Indiana Court of Appeals impliedly lent even greater weight to such a reading. In *King*, a nineteen year old man was killed in an automobile accident. His parents had divorced nine years before and the father retained custody. Upon the death of the son the father filed a complaint for wrongful death naming as a defendant, *inter alia*, the non-custodial mother "to answer as to her interest." *Id.* at 261. Ultimately, the father settled with the other defendant and the case was dismissed with prejudice. However, the mother then claimed that she never received notice of either the settlement, or the motion to dismiss, and she filed a motion for relief from judgment. Although the case principally focused upon whether relief from judgment was appropriate, the Court of Appeals observed that setting aside the earlier judgment would have little practical effect since "it is doubtful [the mother's] recovery would have been significant." *Id.* at 264 n. 6. The Court of Appeals offered two reasons for this opinion: the mother had had virtually no contact with her son and therefore could not establish a loss; and second, her "recovery

---

4. The mother apparently did not have a cause of action under Indiana Code section 34–1–1–8 because her 20 year old daughter was not, at the

time of her death, a "child" within the meaning of that statute. Ind.Code § 34–1–1–8(a)(1), (2).

would also be hampered by Indiana Code section 34-1-1-8(f)(1) which limits wrongful death damages to the period between the death of the child and the time the child would reach twenty years of age ...[.]" The point the *King* court is making is inescapable: since damages for the wrongful death of a child are temporally limited by section (f) of the Act, the mother would have been entitled to only, at best, a modest recovery for the loss of the love, companionship, and services of her nineteen year old child.

Thus, the Indiana Civil Pattern Jury Instructions (bearing the approval of the Indiana Supreme Court) together with case law from the Indiana Court of Appeals, suggests that the pecuniary loss rule, as modified in 1987, continues to contain the temporal limitations previously engrafted upon it by case law; thus all recoverable elements of damage are essentially limited to a child's "minority" (legislatively described for purposes of the Act as either twenty-one or twenty-three).

■ With such a reading, Indiana appears to have joined several other jurisdictions which, while technically bound by the pecuniary loss rule, nevertheless allow recovery for the "pecuniary value" of a child's society and companionship as a specie of compensable pecuniary injury. 1 Stuart Speiser, Charles Krause, Juanita Madole, Recovery for Wrongful Death and Injury § 3:50 p. 235 (1992). *See, e.g.,* John F. Waggoner, Jr., Annot. *Recovery of Damages for Loss of Consortium Resulting From Death of Child—Modern Statutes,* 77 A.L.R. 4th 411, 417 (1990). Other jurisdictions have adopted a similar attitude. 77 A.L.R.4th at § 9(b) (citing *Department of Educ. v. Blevins,* 707 S.W.2d 782 (Ky.1986)) (relying on Kentucky statute); *Pearsall v. Emhart Indus., Inc.,* 599 F.Supp. 207 (E.D.Pa.1984) (relying on Pennsylvania law). *See also,* 22A Am.Jur.2d *Deaths* § 253 (1988). *Cf. Balmer v. Dilley,* 81 Wash.2d 367, 502 P.2d 456 (1972) (if there is no period limitation in a death statute as to the recovery of damages for the loss of companionship of a child, then the jury should not be limited to consider only the decedent's minority). *See* 1 Stuart Speiser, Charles Krause, Juanita Madole, Recovery for Wrongful Death and Injury § 4:22 p. 147.

The principal case cited by the Plaintiffs for a different view comes from Maryland. In *Barrett v. Charlson,* 18 Md.App. 80, 305 A.2d 166 (1973) the parents of a twenty year old unmarried daughter who was involved in a single vehicle automobile accident brought an action against the driver of the car under Maryland's wrongful death statute. The parents alleged that they suffered the loss of the society and companionship of their child; at trial, evidence of mental anguish and pain (compensable in Maryland, but not in Indiana) was introduced, but no proof of pecuniary damages was offered. The jury was instructed that they could award damages for mental anguish, emotional pain and suffering, loss of society and companionship but only until the child would have reached her twenty-first birthday. *Id.,* 305 A.2d at 168. The jury awarded $2,500 in damages. Upon denial of a motion for a new trial an appeal followed. The Court of Appeals, in reviewing Maryland's Wrongful Death Statute, determined that the trial court erred in instructing the jury because the statute expressly stated that it would not be limited or restricted to the "pecuniary loss" or "pecuniary benefit" rule; thus, the court concluded that it had also been the Legislature's intent to remove any vestiges of the pecuniary loss rule's temporal restrictions. *Id.,* 305 A.2d at 173. As the Court of Appeals held:

> In our view the General Assembly did not expressly impose, nor did it intend impliedly to impose, any of the limitations of the "pecuniary loss" rule upon the newly enumerated categories of damages made recoverable by virtue of [Maryland's Wrongful Death Statute].

*Id.,* 305 A.2d at 174. Indeed, as the Maryland Court of Appeals observed, if the mother sustained mental anguish resulting from the wrongful death of her daughter, and thus was driven into a mental institution for the rest of her life, it could hardly be maintained that it was the General Assembly's intention to limit the mother's recoverable damages to just those few years remaining between the death of the child and the date the child would have attained majority. *Id.* The

Court of Appeals reversed and remanded for a new trial. *Id.,* 305 A.2d at 177.

Indiana's statute is different. As *Barrett* observed, the 1969 Maryland Legislature somewhat explicitly extirpated the pecuniary loss rule from wrongful death claims. *Id.* 305·A.2d at 173 n. 8. On the other hand, the pecuniary loss rule remains part of the measure for wrongful death damages in the State of Indiana. *See Wiersma,* 643 N.E.2d at 912. *See,* INDIANA CIVIL PATTERN JURY INSTRUCTIONS at fn. 3, *supra.* Moreover, there is no indication that the Indiana Legislature, in amending the Act in 1987, was motivated to jettison the pecuniary loss rule from Indiana jurisprudence. Indeed, unlike the Maryland statute which imposes no temporal limitations on the recovery of damages, the Indiana statute expressly limits the period of time for the recovery of damages based upon either the child's age, or the date of the last surviving parent's death. IND. CODE § 34–1–1–8(f)(1)(2). As such, the statute is faithful to prior Indiana case law which limited the recovery for the services of a child to the child's minority. *Wiersma,* 643 N.E.2d at 912 (citing *Siebeking,* 148 N.E.2d at 206). So, the addition of damages for the loss of a child's love and companionship, Indiana Code section 34–1–1–8(e)(2), would appear to be nothing more than the Legislature's swift reaction to the *Miller* case—but their answer to *Miller* was carefully measured: to simply add an additional element of damages to the already existing pecuniary loss rule. In other words, there was nothing about the *Miller* case that would have led the Legislature to believe that they needed to enact a wholly different temporal limitation for the loss of the love and companionship of a child.

After all, it appears undeniable that the Indiana Legislature (unlike the Maryland Legislature) also moved to limit the period of recovery for a parent's necessary psychiatric or psychological counseling as a result of the loss of a child; restricting it to only what would have been the deceased child's minority. IND. CODE § 34–1–1–8(e)(3)(C) and (f)(1). The Maryland Legislature, focusing on removing all temporal limitations, obviously drew that line in a far different way. *See Barrett,* 305 A.2d at 174.

So, if as it would appear, this was truly the intention of the Indiana Legislature, what is one to make of the language of subsection (g) of the Act? In interpreting subsection (g), the Court must attempt to give effect and meaning to its language, so that it can be reconciled with the rest of the statute. *Chamness,* 575 N.E.2d at 319. In doing so, it is hard to escape the observation that the statute, on its face, appears to be imprecisely drafted, probably due somewhat to the haste in which the Legislature acted following the *Miller* decision, and because this area of the law can be factually sensitive and legally complex. Nonetheless, one basis upon which subsection (g) can be explained is the situation where the child has been placed with a custodian (perhaps a grandparent or adult sibling) with the child then predeceasing the parents who subsequently die before the child would have attained twenty years of age. Despite the fact that the guardian or custodian may have developed an affectionate bond with the minor child, resulting in having sustained the lost love and companionship of the child, those damages cease with the death of the last surviving parent. Thus, subsection (g) underscores the Legislature's view that damages pursuant to subsection (e)(2) must cease with the death of the parents no matter who asserts the loss.

Another possible explanation is that while an action can also be maintained for injury to a child, Indiana Code section 34–1–1–8(b)(d), the Legislature chose not to catalog the damages that could be awarded in such a situation. *Cf.* IND. CODE § 34–1–1–8(e). Since the Legislature apparently chose to allow the common law to dictate the proper measure of such damages, it is conceivable that a party could argue that they were entitled to the loss of a child's companionship due to a negligently—caused injury. *See generally,* S. ALEXANDER, *"A Fairer Hand: Why Courts Must Recognize the Value of a Child's companionship."* 8 THOMAS M. COOLEY L.R., P. 273 (1991). In such a situation, given the language of subsection (g), the Legislature may have intended to limit damages for lost love and companionship to "only" child death cases—not child injury situations. Indeed, such a reading is reflected in Indiana Pattern Jury Instruction 11.52 dealing with an injury

to a child, which, in contradistinction to the Pattern Jury Instructions involving the wrongful death of a child, *see* footnote 3, *supra*, precludes the jury from considering the parents deprivation of the happiness, comfort and society of the injured child.

While the foregoing are simply two possible explanations for subjection (g), there may be other more intensely factual situations that were contemplated by the Legislature but which are not readily apparent. In any event, it is the job of the Legislature to draw such lines, *Miller*, 506 N.E.2d at 11, and they have apparently chosen to draw them in the fashion revealed here. Of course, whenever lines are drawn, inequities frequently result. After all, if Kurt had been slightly older on the date of his death, (so as to no longer to fall within the definition of "child" within the meaning of Indiana Code section 34–1–1–8(a)) then the Plaintiffs would be forced to prosecute this action under Indiana Code section 34–1–1–2 and would have been entitled to no damages for his lost love and companionship—unless, of course, they could be considered "dependent" next of kin, a status that they have not claimed. *See Wiersma*, 643 N.E.2d at 913. While all of this may seem to be unfair, any change must come from with the Legislature, not the courts. *Miller*, 506 N.E.2d at 11.

As a consequence of the foregoing, the Court will grant partial summary judgment in favor of the Defendants and against the Plaintiffs.

### V. CONCLUSION

The Defendants' Motion for Partial Summary Judgment is hereby GRANTED and the Plaintiffs' Motion for Partial Summary Judgment is hereby DENIED. The Plaintiffs shall be entitled to damages for the lost love and companionship of Kurt, but only until such time as he would have attained twenty years of age; or, depending upon the evidence, perhaps twenty-three years of age.