JAMES W. WALLACE *v.* WARREN WOODS.

[No. 1070A171. Filed July 20, 1971. Rehearing denied August 19, 1971. Transfer denied February 29, 1972.]

*John L. Carroll, Charles C. Griffith, Johnson and Carroll,* of counsel, of Evansville, for appellant.

*Joe S. Hatfield, Donald R. Wright, Fine, Hatfield, Sparrenberger & Fine, James M. Schwentker, Jr., Norton and Schwentker,* all of Evansville, for appellee.

LOWDERMILK, J.—This is an action brought by plaintiff-appellant to recover damages for the death of his minor son, Keith Quinn Wallace, who died June 26, 1969, from injuries received in a motorcycle accident on June 19, 1969. The appellant's son was 19 years of age and at the time of the accident was home on leave of duty from Vietnam and had been living at home with his parents for a period of 29 days during his leave of duty.

On the morning of June 19, 1969, appellant's son was operating a motorcycle in an easterly direction on Bellemeade Avenue in Evansville, Indiana. As he approached Evans Avenue the appellee entered the intersection travelling south on Evans Avenue. The collision that caused the death of appellant's son resulted.

The appellant brought suit in two paragraphs of complaint. The first pleading paragraph alleges damages for the services of doctors, surgeons, nurses, and hospital care resulting from the collision between the date of the accident and the time of the minor son's death, together with a pecuniary loss to the appellant for the lost acts of kindness of the minor son, along with the funeral expenses for the minor son.

The second pleading paragraph alleges damages not only for those items set forth in pleading paragraph one, but also for medical and hospital expenses incurred in the birth of the son, the cost of food, clothing and shelter paid to raise the son from birth until the date of his death. The appellant further prays for the cost of schooling and education from birth to 19 years, the cost of medical and dental care and for the fair value of care, attention and instruction given to the minor son by the appellant and his wife from the birth of the son until the age of 19 years. The total amount that the appellant claims he was damaged is the sum of $85,000.

The defendant-appellee then filed a composite motion, consisting of a motion to strike parts of pleading Paragraph I of plaintiff's complaint and a motion to make pleading Paragraph I of plaintiff's complaint more specific. The defendant also filed a motion to strike pleading Paragraph II, a motion

to strike parts of pleading Paragraph II, and a motion to make parts of pleading Paragraph II more specific.

The trial court sustained the motion to strike pleading Paragraph II of plaintiff's complaint and allowed the plaintiff reasonable time to plead further, which the plaintiff chose not to do.

The appellee then filed his answer to pleading Paragraph I of plaintiff's complaint for wrongful death, and after answering all interrogatories, filed a motion for summary judgment, which is here set out:

"Motion for Summary Judgment

"The defendant, by his attorneys, Fine, Hatfield, Sparrenberger & Fine, hereby moves the Court to enter a summary judgment for the defendant in this action on the grounds that the pleadings in this case together with plaintiff's answers to defendant's interrogatories and admissions show that the plaintiff is not entitled to a judgment in this action as a matter of law."

Subsequent to this motion the appellant's wife filed an affidavit in opposition to appellee's motion for summary judgment, which affidavit reads as follows (omitting formal parts):

"Anita R. Wallace, being first duly sworn upon her oath, deposes and says:

"1. That she is the natural mother of one Keith Quinn Wallace, now deceased.

"2. That the said Keith Quinn Wallace entered military service on December 5, 1967 and might have been discharged anytime prior to December 1, 1970 for any of the following reasons:

"a. That the said Keith Quinn Wallace had experienced a kidney infection prior to entering the military service and further while he was in military service, suffered extreme nervousness, mononucleosis and nervous stomach and was hospitalized for nervousness and mononucleosis during the time he was in military service in June of 1968.

"b. That the conflict in Vietnam could have ended anytime prior to December 1, 1970 and by reason thereof the said Keith Quinn Wallace could have been discharged.

"c. That instead of having been accorded his normal two (2) weeks tour of rest and recreation while in the military service and while having served in the Vietnam conflict, the said Keith Quinn Wallace had only been granted three (3) days of rest and recreation and by reason thereof the additional time due him for rest and recreation could have shortened his time for discharge.

"3. That prior to entering military service and at all times that this affiant conversed with the said Keith Quinn Wallace, Keith Quinn Wallace indicated his intention to come back home and live with his parents, James E. Wallace and this affiant following his discharge from military service, for the reason that Keith Quinn Wallace had not finished high school and intended to live at home and complete his schooling, following military service.

"4. That at the time of the accident in question the said Keith Quinn Wallace had been living at home with his parents, James E. Wallace and this affiant for a period of twenty-nine (29) days, while on leave from the military service and was subject to parental control during his leave."

On June 30, 1970, the court heard the defendant's motion for summary judgment and rendered its judgment, which judgment is as follows:

"Come now the parties by counsel and the plaintiff having refused to plead further as to pleading paragraph II of his complaint, the Court now enters judgment against the plaintiff and for the defendant as to pleading paragraph II of plaintiff's complaint.

"And now the Court after hearing oral argument and being duly advised in the premises now sustains the motion of the defendant to strike parts of the affidavit of Anita R. Wallace filed in opposition to the defendant's motion for summary judgment and numerical paragraphs 2 and 3 of the affidavit of Anita R. Wallace are now stricken from said affidavit.

"And now the Court after a hearing and oral argument on the defendant's motion for summary judgment and being duly advised in the premises now finds that at the time of the death of Keith Wallace, plaintiff's decedent, that the said Keith Wallace was emancipated by reason of being a member of the armed forces of the United States and that pleading paragraph I of plaintiff's complaint is brought pur-

suant to Section 2-217, Ind. Ann. Stat., Burns' for the alleged loss of services of said Keith Wallace and that by reason of the emancipation of the decedent, Keith Wallace, the plaintiff is not entitled to the services of the said Keith Wallace and there being no genuine issue on said material facts that the defendant's motion for summary judgment should be sustained.

"IT IS THEREFORE CONSIDERED, ORDERED AND ADJUDGED that plaintiff take nothing by paragraph II of his complaint herein.

"IT IS FURTHER CONSIDERED, ORDERED AND ADJUDGED that the defendant's motion for summary judgment be and is hereby sustained.

"IT IS FURTHER CONSIDERED, ORDERED AND ADJUDGED that the plaintiff take nothing by paragraph I of his complaint herein against the defendant and that the costs of this action are assessed against the plaintiff."

The plaintiff-appellant timely filed his motion to correct errors, which was overruled by the trial court on July 30th, 1970. The errors that were alleged was that there was uncorrected error of law occurring and properly raised in the proceedings prior to the trial, in that the trial court struck Paragraph II of plaintiff's complaint, and secondly, that the decision of the trial court is contrary to law.

The appellant presents an in-depth argument as to why the trial court should not have struck Paragraph II of his complaint. This particular pleading paragraph prays for monetary damages on a "lost investment" theory. This theory would allow the appellant to recover for his expeditures in maintaining and caring for his deceased minor son from the time of the decedent's birth; including the cost of food, clothing, shelter, dental care, schooling and a fair value for attention and instructions given to the decedent for the nineteen years of his life on behalf of the appellant and his wife.

When the trial court struck Paragraph II of the complaint the question of emancipation had not been brought to issue. The reason for this is because neither of the two Paragraphs of the complaint indicated that the decedent may have been

emancipated at the time of the accident. Thus, we must answer the question considering only what was before the trial court at the time of the striking and defer the question of emancipation in our treatment of the summary judgment.

It is undisputed that this case was brought to trial under Ind. Ann. Stat., § 2-217 (Burns 1967 Replacement), which allows a parent to bring an action for injury or death of his child. The governing statute is set out as follows:

> "Action for injury or death of child.—A father, or in case of his death, or desertion of his family, or imprisonment, the mother, or in case of divorce, the person to whom custody of the child was awarded, may maintain an action for the injury or death of a child; and a guardian may maintain such action for the injury or death of his ward; in case of death of the person to whom custody of the child was awarded, a guardian shall be appointed to maintain an action for the injury or death of his ward. But when the action is brought by the guardian for an injury to his ward, the damages shall inure to the benefit of his ward. (Acts 1881 (Spec. Sess.), ch. 38, § 29, p. 240; 1951, ch. 112, § 1, p. 307.)"

It is under this statute that the appellant presented his "lost investment" theory in the second pleading Paragraph of his complaint. As we look to prior cases and opinions of the Appellate and Supreme Courts it is quite readily seen that the standard of awarding damages under this statute is the loss the parent incurred from the time of the child's death to the time of the child's age of majority. In the case of *Hahn et al.* v. *Moore* (1956), 127 Ind. App. 149, 133 N. E. 2d 900, this court held:

> "Appellants' brief quotes, in effect, *the rule that the measure of damages in a case of this kind is the value of the child's services from the time of death until he would have attained his majority,* taken in connection with his prospects in life less the cost of his support and maintenance during that period, including board, clothing, schooling and medical attention. To this may be added, in proper cases, the expenses of care and attention to the child, made necessary by the injury, funeral expenses and medical services.

*Thompson* v. *Town of Fort Branch* (1931), *supra, The Pennsylvania Co.* v. *Lilly* (1881), 73 Ind. 252, 254; *Jones* v. *Drewery's, Limited, U.S.A., Inc.* (1945), 149 Fed. 2d 250, 251. Appellants also add that the jury may consider the condition of the decedent's family and the pecuniary value of all acts of kindness and attention which the deceased child might reasonably be anticipated to render until its majority. But that the parent has been deprived of the happiness, comfort, and society of the child or has incurred physical or mental suffering or pain by reason of loss of the child, may not be considered by the jury." (Our emphasis.)

In a later case of *Siebecking* v. *Ford* (1964), 128 Ind. App. 475, 148 N. E. 2d 194, this court again stated the standard of damages under this statute when it said:

"The courts of this state have frequently stated that in an action by a parent for the death of his child, he is entitled to recover only for the pecuniary injury he has sustained and that *the proper measure of damages is the value of the child's services from time of injury until he would have attained his majority*, taken in connection with his prospects in life, less his support and maintenance, to which may be added, in a proper case, the expense of care and attention to the child, made necessary by the injury, funeral expenses and medical services. *The Pennsylvania Company v. Lilly* (1881) 73 Ind. 252; *Thompson* v. *Town of Fort Branch, supra; Hahn* v. *Moore, supra.*" (Our emphasis.)

This standard of damages has repeatedly been stated by this court and upheld by the Supreme Court. The appellant admits this fact and does not dispute that this standard is the law. Rather, he is asking this court to overrule the many cases establishing the standard of damages under the governing statute and to adopt a "lost investment" theory, which would allow a recovery from the moment of birth until the date of death. His argument in support of this theory is substantially as follows:

The governing statute in this case was enacted in 1881. It was at this time that children worked long hours in con-

tribution to the family livelihood and existence, and generally speaking, supported themselves at a very early age. Because of this economic demand for the labor of children, the legislature did not see a need for a parent to recover a lost investment in the untimely death of their minors for the mere fact that the minor had, in most cases, made substantial contribution to his own livelihood and to that of his family. Rather, the standard of damages was determined to be for the period of time from death to majority because it is that period that the decedent's family will miss the child's income and thus be damaged.

As time progressed the Federal Child Labor Laws were passed, in 1924. This, of course, put a stop to the repugnant notion that children, from the age of four years on, should work long hours in the field or shop. It was also at this time that the Indiana Legislature required that children remain in school until the age of sixteen. The appellant contends that it is from this era forward that children became a monetary drain on the parents, and cites such statistics of the effect that in 1950 only 31% of the children in the United States in the 14-19 year old category were members of the labor force. He also cites a law journal article that in 1950 it cost a parent over $34,000 to raise a child to the age of 18.

The appellant further argues against our present standard of damages by presenting to us a hypothetical situation of considering a minor who is killed two days before his 21st birthday and was not employed at the time. Under the present child labor theory measure of damages, the prospective earnings would be zero between the age of the child at death and his majority, and the parents would probably incur two days cost of maintaining the child until he reached age 21. The result would be a minus figure. However, the actual loss to the parents would probably be more significant in the case of the nearly 21-year-old child than in the case of the one-year-old for the reason that the parents would have expended much more in education and living expenses upon the child, and the

child would have become much more of an integral part of the family unit. In either of the two foregoing examples, however, there would be a loss prospectively for the loss of companionship, although in the case of the near 21-year-old, the prospective loss would be minimal. The jury should be permitted to utilize the lost investment measure of damages and add to it, the prospective loss of companionship to age 21.

The appellant's argument has entailed vast research and presents an interesting question.

Under appellant's "lost investment" theory, he is asking this court to disregard Ind. Ann. Stat. § 2-217 (Burns 1967 Replacement). This court has, as late as 1967, very materially liberalized the rule on the measure of damages for the death of minors, as evidenced by the case of *Allison* v. *Boles* (1967), 141 Ind. App. 592, 230 N. E. 2d 784 (Transfer denied 12-18-67).

In the *Allison* case, two children of the ages of 7 and 8 years respectively sustained wrongful deaths and in action therefor the court awarded damages in the amount of $25,000. In that case, the court said:

"The first specification of error raised by the Appellant is that the amount of recovery is excessive. We cannot agree with the Appellant's contention that an award of Twenty Five Thousand ($25,000.00) Dollars as damages in this case for the destruction of the Appellee's property rights was excessive. The property right which was destroyed was the plaintiff's legal right as the father of his two children, to their earnings until their maturity. The children were of the ages of seven and eight at the time of their unfortunate deaths.

"*Our courts have held in similar cases that the very nature of the action, the tender youth of the deceased and the uncertainty both of the length of the child's life and of its capacity of attainment while experiencing that life, renders impossible the exact proof of loss sustained by the parent. As a result, our law has recognized that such damages are incapable of determination by any mathematical or exact rule and the determination thereof must be left to the wisdom of the court or jury trying said cause, even*

*though the verdict may be predicated upon a semblance of conjecture. Hahn et al., v. Moore (1956), 127 Ind. App. 149, at 163, 164, 133 N. E. 2d 900; Clevenger v. Kern (1935), 100 Ind. App. 581, 584, 197 N. E. 731.* (Emphasis added.)

"We do not deem it to be necessary to set forth the evidence relating to the potential earnings of the unfortunate children of the Appellee, but believe it sufficient to state that in reviewing such evidence in the record, we are of the opinion that the judgment of Twenty Five Thousand ($25,-000.00) Dollars was well within the scope authorized by the evidence and the rules of law applicable thereto.

"The rule is well established in this state that where the reasonable amount of recovery is in dispute under the evidence, the amount awarded cannot be considered excessive if it is within the scope of the evidence before the court. *First Bank & Trust Company of South Bend, Executor of the Estate of Spiro* v. *Tellson* (1954), 124 Ind. App. 478, 484, 118 N. E. 2d 496.

"The amount of the judgment in this case does not seem to be excessive, when we recognize that the trial court was aware, as is this court, of the current inflated economy and the depreciated value of the dollar. The general rule of law applicable which has been the one recognized for over a hundred years, is to be found in the case of *Coleman* v. *Southwick* (1812), 9 Johns N. Y. 45, 6 Am. Dec. 254, wherein Chancellor Kent stated:

" 'It is not enough to say, that in the opinion of the court, the damages are too high and that we would have given much less. It is the judgment of the jury, and not the judgment of the court, which is to assess the damages in actions for personal torts and injuries . . . The damages, therefore, must be so excessive as to strike mankind, at first blush, as being beyond all measure, unreasonable and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice, or corruption. In short, the damages must be flagrantly outrageous and extravagant, or the court cannot undertake to draw the line, for they have not standards by which to ascertain the excess.' "

This court will maintain our standard for the measure of damages for minors that has repeatedly been set forth by this court and upheld by the Supreme Court. The measure of damages in Indiana for a minor's death is being liberalized

by the courts in an effort to meet the present day conditions. This standard for the measure of damages was the law at the time the trial court struck pleading Paragraph II of the complaint and thus, did not err in so doing.

The next issue presented for consideration by this court is whether or not the trial court erred in striking paragraphs 2 and 3 of appellant's wife's affidavit in opposition to appellee's motion for summary judgment and whether or not the trial court erred in sustaining the summary judgment because the decedent was emancipated as a member of the armed forces.

The appellant's wife, in her affidavit in opposition to defendant's motion for a summary judgment, argues that her son "could have" been discharged early, and that the war in Vietnam "could" end at any time, all of which would allow her son to return home earlier than his time for discharge. Since the decedent's scheduled discharge was to take effect four days after his 21st birthday she argues, for the sake of emancipation, that the boy "could have been home as a minor" and thus unemancipated.

It is elementary that affidavits in a motion for a summary judgment or in opposition to the same, must be made on a high standard of admissability and on the personal knowledge of the movant. Trial Rule 56 (E) of the Indiana Rules of Procedure set forth the requirements of supporting and opposing affidavits.

> *"Form of affidavits — Further testimony — Defense required.* Supporting and opposing affidavits *shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.* . . . When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him. . . ." (Our emphasis.)

It is our opinion that appellant's wife was merely speculating as to what "could" happen in regard to an early discharge. It is elementary that "possibilities," "conjecture," and "surmise" do not meet the standard of admissible evidence. It is for this reason that the trial court did not err in striking paragraphs 2 and 3 of the affidavit in opposition to defendant's motion for summary judgment.

This leaves this court with the final question of whether the trial court erred in granting the summary judgment by finding that by reason of the decedent being in the armed forces he was emancipated.

The cases on emancipation because of the armed forces are limited in Indiana, but in the case of *Corbridge* v. *Corbridge* (1952), 231 Ind. 201, 102 N. E. 2d 764, our Supreme Court held:

> ". . . 'When a minor enlists in the military service of this country he ceases to be a part of his father's family and puts himself under the control of the government *and is consequently emancipated so long as this service continues. . . .'*" (Our emphasis.)

It is clear from the *Corbridge* opinion that a minor is emancipated for the period of time that he is in the armed forces and if a person is still a minor on his discharge he will become unemancipated.

The appellant argues that emancipation is a question of fact for the jury to determine. We believe that this proposition is certainly correct. The case of *Allen* v. *Arthur* (1966), 139 Ind. App. 460, 220 N. E. 2d 658, provides the following:

> "What constitutes emancipation of a minor child is a question of law, but whether there has been an emancipation is a question of fact. *Stitle* v. *Stitle* (1964), 245 Ind. 168, 197 N. E. 2d 764; 22 I.L.E., *Parent and Child,* § 18, p. 366.
>
> "Emancipation of a child is never presumed but must be established by competent evidence, although to do so does

not require proof of an express or formal contract. *Surface v. Dorrell* (1944), 115 Ind. App. 244."

However, the appellant fails to demonstrate any evidence which the appellant submitted to the trial court on the hearing on the motion for summary judgment which would raise a genuine issue as to any material fact as to emancipation. The parties both agree that the decedent was in the military at the time of his death, and since the military emancipates a minor for the period of his service there was no issue of fact for the jury to determine. The decedent was thus emancipated from his parents and such emancipation of the son defeats the action of the plaintiff-appellant under Ind. Ann. Stat., § 2-217 (Burns 1967 Replacement) as a matter of law.

Finding no reversible error, this cause is hereby affirmed.

Sullivan, P.J., Buchanan and Robertson, JJ., concur.

NOTE.—Reported in 271 N. E. 2d 487.