Darcy J. ROBINSON, Appellant
(Defendant below),

v.

Robert J. WROBLEWSKI and
Ann Wroblewski, Appellee
(Plaintiffs below).

No. 02S03–9809–CV–482.

Supreme Court of Indiana.

Dec. 31, 1998.

Richard P. Samek, Larry L. Barnard, Miller Carson Boxberger & Murphy, L.L.P., Fort Wayne, for Appellant.

Norman T. Funk, Donald D. Levenhagen, Alan J. Irvin, Hill, Fulwider, McDowell, Funk & Matthews Indianapolis, for Amicus Curiae, Indiana Defense Lawyers Association.

John D. Ulmer, Craig M. Buche, Yoder, Ainlay, Ulmer & Buckingham Goshen, for Appellee.

Gregory H. Miller, Wernle, Ristine & Ayers, Crawfordsville, for Amicus Curiae, Indiana Trial Lawyers Association.

### ON PETITION TO TRANSFER

SULLIVAN, Justice.

Robert and Ann Wroblewski's son was killed in an automobile accident. They seek damages for the loss of his love and companionship measured using the time period from his death until the death of his last surviving parent. Darcy Robinson, the defendant, argues for a shorter measuring period. We hold that Indiana's Child Wrongful Death Act[1] authorizes the measuring period advocated by the Wroblewskis.

---

1. Ind.Code § 34–23–2–1 (1998). At the time relevant to this case, this statute was found at

## Background

On September 4, 1994, Brian Wroblewski's automobile collided with Darcy Robinson's in Monroe County. As a result of the collision, Brian Wroblewski died at the age of twenty-two. At the time of his death, Brian was enrolled as a student at Indiana University in Bloomington. Brian's parents, Robert and Ann Wroblewski, filed a wrongful death claim in the Allen Superior Court seeking, in part, damages for the loss of their son's "love, comfort and companionship ... [that they] will suffer [for] the rest of their lives."

Robinson moved to strike from the complaint the Wroblewskis' request for damages measured using the time period from the date of Brian's death until the death of Brian's last surviving parent. Instead, Robinson argued that the Wroblewskis should only be entitled to recover damages measured using the time period from the date of Brian's death until the date Brian would have reached the age of 23. This latter measuring period is the same as that assigned by the statute for damages for the loss of a child's services.[2] The trial court concluded that the legislature intended "two specific and independent limitations" on damages and found that the recovery for the loss of a child's love and companionship began upon the death of the child and extended until the death of the last surviving parent.

This case was brought before the Court of Appeals on interlocutory appeal on the sole issue of whether "Indiana's Child Wrongful Death Act permits the recovery of damages for the loss of a child's love and companionship until the death of the last surviving parent." That court answered in the affirmative. *Robinson v. Wroblewski*, 679 N.E.2d 1348, 1349 (Ind.Ct.App.1997). Robinson petitioned this Court for transfer, which we granted.

## Discussion

### I

The statutory provisions at issue in this case were enacted by the General Assembly in 1987 in the wake of our holding in *Miller v. Mayberry*, 506 N.E.2d 7 (Ind.1987). In *Miller*, parents sought damages for the loss of a child's love and affection after the death of their seventeen year old son. We held then that "the pecuniary loss rule is the law in Indiana" and serves "as an element of damages for a parent suing for the injury or death of a minor child." *Id.* at 8. As such, damages for the loss of a minor child were limited to those losses on which a pecuniary value could be placed. Such a value could be determined from the assistance that the child would have provided through money, services or other material benefits. *Id.* at 10 (citing *Mayhew v. Burns*, 103 Ind. 328, 2 N.E. 793 (1885); *Louisville, New Albany, and Chicago Ry v. Goodykoontz*, 119 Ind. 111, 21 N.E. 472 (Ind.1889); *Louisville, New Albany, and Chicago Ry. v. Rush*, 127 Ind. 545, 26 N.E. 1010 (1890)). *See also Southlake Limousine & Coach, Inc. v. Brock*, 578 N.E.2d 677, 679 (Ind.Ct.App.1991). In essence, a parent could only recover for the economic loss of a minor child. A parent could not recover for the loss of a child's love and affection. *Miller*, 506 N.E.2d at 11.

In addition, under the pecuniary loss rule in Indiana, recoverable damages in an action for the wrongful death of a minor child for loss of services were measured using the time period from the date of the child's death to the date the child would have reached the age of majority. *Thompson v. Town of Fort Branch*, 204 Ind. 152, 157, 178 N.E. 440, 444 (1931) (citations omitted); *Boland v. Greer*, 409 N.E.2d 1116, 1119 (Ind.Ct.App.1980) (quoting *Wallace v. Woods*, 149 Ind.App. 257, 262–68, 271 N.E.2d 487, 490–93 (1971)); *Hahn v. Moore*, 127 Ind.App. 149, 158, 133 N.E.2d 900, 904 (1956).

It is well settled that, in an action by a parent for the death of his child, he is entitled to recover only for the pecuniary injury he has sustained, and that *the prop-*

---

Ind.Code § 34–1–1–8. The language of the statute remains unchanged. For convenience, we will use the current code location in this opinion.

**2.** For purposes of the Child Wrongful Death Act, a "child" is defined as an "unmarried individual without dependents who is less than twenty years of age; or, less than twenty-three years of age and is enrolled in an institution of higher education or in a vocational school or program." Ind.Code § 34–23–2–1(a) (1998).

*er measure of damages is the value of the child's services from the time of the injury until he would have attained his majority,* taken in connection with his prospects in life, less his support and maintenance. To this may be added, in proper cases, the expenses of care and attention to the child, made necessary by the injury, funeral expenses and medical services.

*Pennsylvania Co. v. Lilly,* 73 Ind. 252, 254 (1881) (citations omitted; emphasis added). *See also Wallace,* 149 Ind.App. at 263–64, 271 N.E.2d at 491(citations omitted).

In summary, *Miller* reiterated that there were two characteristics of the pecuniary loss rule as it applied to an action for the wrongful death of a minor child: (1) the amount of damages recoverable was limited to the economic loss sustained by the parents; and (2) the time period over which the economic loss was calculated terminated at the age of majority. We declined the invitation to change either of these characteristics of the pecuniary loss rule. *Miller,* 506 N.E.2d at 11.

> The Legislature has not changed its position on the pecuniary loss rule, even though it had full knowledge of this Court's interpretations of its enactments and in spite of the fact that efforts have been made to provide for a change in the measure of damages awarded to parents for the loss of a minor child.

*Id.* at 9. Instead, we noted the power of the legislature to change the rule if it "disagree[d] with the Court's constructions of its legislative enactments or fe[lt] that there [was] a need to change [the pecuniary loss rule] based on the needs or requirements of society." *Id.* at 11.

One month after our decision in *Miller,* the General Assembly amended the Child Wrongful Death Act, explicitly authorizing parents to recover damages for the loss of a child's love and companionship. The Act as amended provides in pertinent part as follows:

> (e) In an action to recover for the death of a child, the plaintiff may recover damages:
>
> (1) for the loss of the child's services;

> (2) for the loss of the child's love and companionship; and
>
> (3) to pay the expenses of:
>
> (A) health care and hospitalization necessitated by the wrongful act or omission that caused the child's death;
>
> (B) the child's funeral and burial;
>
> (C) the reasonable expense of psychiatric and psychological counseling incurred by a surviving parent or minor sibling of the child that is required because of the death of the child;
>
> (D) uninsured debts of the child, including debts for which a parent is obligated on behalf of the child; and
>
> (E) the administration of the child's estate, including reasonable attorney's fees.
>
> (f) Damages may be awarded under *this section only with respect to the period of time* from the death of the child until:
>
> (1) the date that the child would have reached:
>
> (A) twenty (20) years of age; or
>
> (B) twenty-three (23) years of age if the child was enrolled in an institution of higher education or in a vocational school or program; or
>
> (2) the date of the child's last surviving parent's death; whichever first occurs.
>
> (g) Damages may be awarded under *subsection (e)(2) only with respect to the period of time* from the death of the child until the date of the child's last surviving parent's death.

Ind.Code § 34–23–2–1 (1998)(emphasis added).

The measuring period used to calculate damages under the Child Wrongful Death Act are described in subsections (f) and (g). Through the use of the phrase "this section," subsection (f) appears to limit the measuring periods for calculating each of the three types of damages specified in subsections (e)(1), (e)(2) and (e)(3) to the date that the child would have reached the relevant age, or until the death of the child's last surviving parent, whichever first occurs. However, the language in subsection (g), through specific reference to "subsection (e)(2)," appears to provide for a different measuring period to

calculate damages for the loss of a child's love and companionship: from the death of the child until the death of the child's last surviving parent. Therefore, the issue before this Court is to determine whether the reference to "this section" in subsection (f) pertains to *all* recoverable damages delineated in the Act, or whether, in the face of the language in subsection (g), damages for the loss of a child's love and companionship are to be measured using the time period from the death of the child to the death of the child's last surviving parent.

Each of these two different interpretations has been utilized by one or more courts. In *Herriman v. Conrail, Inc.*, the parents of a nineteen (19) year old who died in a railroad grade crossing collision sought damages from the railroad. *Herriman v. Conrail, Inc.*, 887 F.Supp. 1148, 1150 (N.D.Ind.1995). After a review of Indiana case law, the federal district court concluded that Indiana had not abandoned the pecuniary loss rule, but merely amended it to permit recovery of an additional type of damages—loss of a child's love and companionship. *Id.* at 1154. The court further reasoned that the pecuniary loss rule in Indiana "continues to contain the temporal limitations previously engrafted upon it by case law." *Id.* at 1156. Consequently, damages for the loss of a child's love and companionship were held to be measured using the same period as that for damages for the loss of a child's services. *Id.*

Two years later, in the case before us today, the Indiana Court of Appeals declined to follow *Herriman.* Instead, the court held that a parent was entitled to recover damages for the loss of a child's love and companionship until the death of the last surviving parent. *Robinson,* 679 N.E.2d at 1354. The Court of Appeals determined that the legislature intended to create two distinct recoveries for the wrongful death of a child: (1) damages recoverable for the loss of a child's services (pecuniary losses), and (2) damages recoverable for the lost love and companionship of a deceased minor child (non-pecuniary losses). *Id.* After considering the legislative history, the Court of Appeals concluded that the legislature only intended to limit the recovery for "pecuniary losses to

the period equivalent to the child's minority" whereas the recovery for the loss of a child's love and companionship (a non-pecuniary loss) was intended to be awarded "solely to a period of time from the death of a child until the date of the child's last surviving parent's death." *Id. Accord Carper v. Tuning,* No. EV 96–19–C–D/H, 1997 WL 580693 at *1 (S.D.Ind. Jan.28, 1997).

## II

In 1987, the legislature responded to *Miller* by enacting Senate Bill 2—an amendment to the Child Wrongful Death Act—which included the recovery of damages for the loss of a child's love and companionship. Pub.L. No. 306 (1987) (now codified at Ind.Code § 34–23–2–1). We have reviewed the history of the movement of the Child Wrongful Death Act amendment through the General Assembly in 1987 and believe that history dictates certain conclusions helpful to our inquiry. We begin with a general overview of the problem and then turn to a more specific review of the legislative history.

## A

As introduced and throughout the bill's movement through the 1987 legislature, SECTION 1 of Senate Bill 2 provided, *inter alia,* that three new subsections would be added to section 1 of Ind.Code § 34–23–2. As introduced, those subsections contained the following provisions:

— The first, subsection (d) (changed to (e) in the final version of the bill), provided that the plaintiff in a child wrongful death action could recover damages:

 (1) for the loss of the child's services;

 (2) for the loss of the child's love and companionship;

 (3) to pay certain expenses specified in the bill.

— The second, subsection (e) (changed to (f) in the final version of the bill), provided that the period for measuring damages under subsection (d)(1) would run from the time of the child's death until the child would have reached a specified age.

— The third, subsection (f) (changed to (g) in the final version of the bill), provided that the period for measuring damages under subsection (d)(2) would run from the time of the child's death until the death of the child's last surviving parent.

*Senate Bill No.* 2, 105th Ind. General Assembly (1987) (Nov. 18, 1986 printing).

While important changes were made to the details of these and other provisions of the bill as it progressed through the General Assembly, the structure of these three subsections remained the same until the final version of the bill emerged. As noted, the subsections were re-lettered. And, as mentioned *supra*, the second subsection was changed to provide that the period for measuring damages under "this section" would run from the time of the child's death until the child would have reached a specified age. However, the third subsection remained unchanged. As such, the change in the language of the second subsection provided a different measuring period for calculating damages for loss of love and companionship than the language of the third subsection.

Our inquiry, then, is whether the change in the final version of the bill inserting the "this section" language was an expression of legislative intent that the measuring period for calculating damages for loss of love and companionship runs from the time of the child's death until the child would have reached a specified age rather than from the time of the child's death until the death of the child's last surviving parent. To pursue this inquiry, we turn to a more detailed examination of the bill's legislative history.

At various stages during the legislative process, provisions concerning the following aspects of the child wrongful death statute were included in, deleted from, or amended to the legislation.[3]

1. *The maximum age of a child whose death would trigger the recovery provisions of the statute.*[4] The bill as introduced provided that damages were recoverable for the wrongful death of a child under age 18. The Senate Judiciary Committee amended the bill to increase the maximum age of covered children from 18 to 21; the full Senate reduced the maximum age back to 18; the House Judiciary Committee set the maximum age at 18 or, for children in college or vocational school, 23; and the full House set the maximum age at 20 or, for children in college or vocational school, 23. The bill as passed adopted the full House's approach, *i.e.*, setting the maximum age of covered children at 20 or, for children in college or vocational school, 23.

2. *The expenses which a parent is entitled to recover as damages under the statute.*[5] The bill as introduced provided that damages were recoverable to pay (a) health care and hospitalization expenses necessitated by the wrongful act or omission that caused the death and (b) funeral and burial expenses. The full Senate amended the bill to add to the list of damages recoverable to pay expenses (a) reasonable family psychiatric and psychological counseling expenses attributable to the child's death, (b) uninsured and unsecured debts of the child, and (c) costs of administration of the child's estate. The House Judiciary Committee amended the bill to delete from the list of damages recoverable to pay expenses the word "unsecured"[6] and the full House added language to include within the meaning of "debts of the child," those debts for which a parent

3. The bill was also amended on several occasions to refine the entitlement to damages where the deceased child's parents both did not have joint custody at the time of death. We omit discussion of these changes as they do not appear to have any relationship to our inquiry.

4. The following legislative materials reflect the changes discussed here: *Senate Bill No. 2*, 105th Ind. Gen. Assembly (1987) (as introduced); *Indiana Senate Journal*, at 61, 399, 872 (1987); *Indiana House Journal*, at 711, 799, 975, 1010 (1987).

5. The following legislative materials reflect the changes discussed here: *Senate Bill No. 2*, 105th Ind. Gen. Assembly (1987) (as introduced); *Indiana Senate Journal*, at 399, 872 (1987); *Indiana House Journal*, at 711, 799, 975, 1010 (1987).

6. We read this as having the effect of making clear that all uninsured debts—secured and unsecured—are recoverable.

was obligated on behalf of the child. The bill as passed adopted the full House approach, *i.e.*, damages are recoverable to pay the expenses of (a) health care and hospitalization necessitated by the wrongful act or omission that caused the death, (b) the funeral and burial, (c) reasonable family psychiatric and psychological counseling expenses attributable to the child's death, (d) uninsured debts of the child, including the debts for which a parent is obligated on behalf of the child, and (e) costs of administration of the child's estate.

3. *The measuring period for calculating damages for (a) loss of a child's services, (b) loss of a child's love and companionship, and (c) expenses.*[7] The bill as introduced provided that the measuring period for calculating damages was set for the period from the date of the child's death (a) until, for loss of a child's services, the first to occur of the child's 18th birthday or the death of the child's last surviving parent; and (b) until, for loss of a child's love and companionship, the death of the child's last surviving parent. No measuring period for calculating damages for expenses would be inserted until the final version of the bill. The Senate Judiciary Committee amended the bill to set the measuring period for calculating damages for loss of a child's services from the date of the child's death until the child's 21st birthday and to delete altogether the measuring period for calculating damages for loss of a child's love and companionship. The effect of this latter deletion is not clear. However, the language of the bill as introduced was restored by the full Senate and remained unchanged until conference committee.[8] In conference committee, the conflicting language that is the subject of our inquiry was inserted, providing *both* (a) that the measuring period for calculating damages for all of (i) loss of services, (ii) loss of love and companionship, and (iii) expenses would run from the date of the child's death until the first to occur of the child's 20th or 23rd birthday or the death of the child's last surviving parent; *and* (b) that the measuring period for calculating damages for only loss of love and companionship would run from the date of the child's death until the death of the child's last surviving parent.

4. *An offset for the damages recoverable for loss of a child's services for the parents' reasonable expenses that would have been incurred in rearing the child.*[9] The bill as introduced provided that damages recoverable for loss of a child's services would be reduced by the parents' reasonable expenses that would have been incurred in rearing the child. The Senate Judiciary Committee deleted this offset for child rearing expenses; the full Senate restored this offset; the House Judiciary Committee made the offset for child-rearing expenses permissive rather than mandatory; and the bill passed the full House in this fashion. The bill as passed contained no offset for child-rearing expenses.

5. *A dollar limitation on the damages recoverable for loss of a child's love and companionship.*[10] The bill as introduced provided that damages recoverable for loss of a child's love and companionship could not exceed $35,000. The Senate Judiciary Committee deleted altogether any limitation on damages recoverable for loss of a child's love and companionship. The full Senate amended the bill to provide that damages recoverable for loss of a child's love and companionship could not exceed $100,000.[11] The House

7. The following legislative materials reflect the changes discussed here: *Senate Bill No. 2,* 105th Ind. Gen. Assembly (1987) (as introduced); *Indiana Senate Journal,* at 61, 399, 872 (1987); *Indiana House Journal,* at 711, 975, 1010 (1987).

8. After the full House amended the bill, the Senate dissented and a conference committee was appointed. *Indiana Senate Journal,* at 742, 750, 761 (1987).

9. The following legislative materials reflect the changes discussed here: *Senate Bill No. 2,* 105th Ind. Gen. Assembly (1987) (as introduced);

*Indiana Senate Journal,* at 61, 399, 872 (1987); *Indiana House Journal,* at 711, 975, 1010 (1987).

10. The following legislative materials reflect the changes discussed here: *Senate Bill No. 2,* 105th Ind. Gen. Assembly (1987) (as introduced); *Indiana Senate Journal,* at 61, 399, 872 (1987); *Indiana House Journal,* at 711–12, 799, 975–76, 1010 (1987).

11. An amendment containing all of these provisions offered by Sen. Costas was adopted by a vote of 25 yeas to 23 nays. Earlier, the Senate

Judiciary Committee deleted altogether any limitation on damages. The full House amended the bill to provide that, for the period May 7, 1987, to May 1, 1990, damages recoverable for loss of a child's love and companionship could not exceed $100,000, with no limitation thereafter.[12] The bill as passed provided that through October 31, 1990, damages recoverable for loss of a child's love and companionship could not exceed $100,000, with no limitation thereafter.

From the foregoing history, we believe that it is clear that the bill, as introduced, set forth a different measuring period for calculating damages for loss of a child's services than that for loss of the child's love and companionship. This helps us focus our inquiry on whether, as the bill proceeded through the legislative process, there is evidence that the General Assembly meant to change the measuring period provisions of the bill as introduced. We conclude that there is not.

There was extensive give-and-take between the supporters and opponents of expanded recovery for the wrongful death of a child: the age of covered children, the expenses recoverable as damages, the offset for child-rearing expenses, and, most of all, the cap on damages for loss of love and companionship—all were "in play." This give-and-take resulted in the compromise that was the final bill. Our legislative intent question, then, reduces itself to whether the conference committee language (replacing the cross-reference "subsection (d)(1)" (now (e)(1)) with "this section") that arguably shortened the measuring period for calculating damages for loss of a child's love and companionship was part of the same or similar legislative compromise or was an inadvertent drafting error.

We conclude that it was an inadvertent drafting error; that the legislature did not intend to change this aspect of the bill, as introduced. We reach this conclusion for several reasons.

First, as a general matter, although the bill was amended substantively in Senate Committee, on the Senate floor, in House Committee, and on the House floor, none of the amendments (with the exception of the one in Senate Committee discussed *supra*) changed the provisions providing separate measuring periods for damages for loss of services and for loss of love and companionship. Because there were no such changes, the language does not seem to have been a likely candidate for compromise in conference committee.

Second, and more specifically, despite all of the skirmishing over a limitation on the amount of damages for loss of love and companionship, there was no attempt in any of those amendments to limit the measuring period for calculating those damages. This bolsters our conclusion that the subject does not seem to have been a likely candidate for compromise.[13]

Third, as a technical drafting matter, if the language change to "this section" was intended, the drafter would also have had both to delete the immediately following subsection and redesignate the next following subsection.[14] But neither of those changes were

---

rejected by a vote of 33 nays and 15 yeas another amendment by Sen. Costas that was identical in all respects except that the limitation on damages for loss of love and companionship was capped at $50,000.

**12.** The House amendment contains the following language explaining the purpose of the limitation on damages provision:

> It is the purpose of this chapter to establish a public policy for the recognition of the value of a child who has been wrongfully killed. The temporary limit established by this chapter for the loss of love and companionship of a child is to enable insurers of wrongdoers to phase in their experience tables and is for no other stated purpose.

*Indiana House Journal*, at 799 (1987). This language was not retained in the final version of the bill.

**13.** While it could be argued that the measuring period only really became an issue after it became clear that the damages cap would expire after several years, the risk of there being no damage cap at all became clear early in the process—in the Senate Judiciary Committee.

**14.** To make this point in more detail, if the change in the language of SECTION 1 of the bill from "subsection (d)(1)" (now (e)(1)) to "this section" was intended, the drafter also would have had not only to delete newly redesignated subsection (g) (containing the measuring period

made. Thus, if the change was intended, there would be two inadvertent drafting errors here, *i.e.*, the failures to delete the immediately following subsection and to redesignate the next following subsection. By finding the language change to "this section" to be the error, we minimize the total number of errors.

We note a possible explanation for the error. The bill as introduced provided recovery for damages for the child's health care and hospitalization prior to death and for funeral and burial expenses. No measuring period was required to calculate these damages. But later versions of the bill added additional expense elements, at least one of which—reasonable family psychiatric and psychological counseling expenses attributable to the child's death—could logically require a measuring period for calculation. It may have been that the change in the measuring period language in the final version of the bill was meant to cover the damages recoverable for expenses as well as for loss of services. Under this theory, it could have been that the drafters either did not realize that they were also including damages recoverable for loss of love and companionship or thought that the more specific language of the following subsection would be sufficient.

### B

Our conclusion is consistent with two canons of statutory construction.

 Where statutory provisions are in conflict, no part of a statute should be rendered meaningless but should be reconciled with the rest of the statute. *Garvin v. Chadwick Realty Corp.*, 212 Ind. 499, 512–13, 9 N.E.2d 268, 273–74 (Ind.1937); *Chamness v. Carter*, 575 N.E.2d 317, 319 (Ind.Ct.App. 1991).

In construing a statutory provision, we must consider the statute as an entirety, with each part being viewed not as an isolated fragment but with reference to all the other companion provisions. To effect the legislature's intent, this Court will construe an ambiguous statute in a manner consistent with other sections of the enactment.

*Hinshaw v. Bd. of Comm'rs of Jay County*, 611 N.E.2d 637, 639 (Ind.1993) (internal citations omitted). We examine the statute as a whole and give common and ordinary meaning to the words employed. *Matter of Lawrance*, 579 N.E.2d 32, 38 (Ind.1991) (citing *Foremost Life Ins. v. Department of Ins.*, 274 Ind. 181, 409 N.E.2d 1092 (1980)).

If the legislature intended the cross-reference "this section" in subsection (f) to apply to all three types of damages identified in subsection (e), it would have imposed a measuring period for calculating damages for loss of a child's love and companionship (one which would terminate at the date the child would have reached age 20 or 23) that cannot be harmonized with subsection (g), a more expansive measuring period that does not terminate until the death of the child's last surviving parent.

Magistrate Judge Cosbey in *Herriman* recognized this problem when he asked, "[W]hat is one to make of the language of subsection (g) of the Act?" *Herriman*, 887 F.Supp. at 1157. He offered two possible explanations. In the first possibility, "subsection (g) underscores the Legislature's view that damages pursuant to subsection (e)(2) [loss of a child's love and companionship] must cease with the death of the parents no matter who asserts the loss." *Id.* In this view, subsection (g) serves to express legislative intent that there is no special measuring period for calculating damages in cases where the child was in the custody of a non-parent guardian.[15]

---

of damages from loss of love and companionship) but also redesignate the following subsection (h) as subsection (i).

**15.** "[O]ne basis upon which subsection (g) can be explained is the situation where the child has been placed with a custodian (perhaps a grandparent or adult sibling) with the child then predeceasing the parents who subsequently die before the child would have attained twenty years

of age. Despite the fact that the guardian or custodian may have developed an affectionate bond with the minor child, resulting in having sustained the lost love and companionship of the child, those damages cease with the death of the last surviving parent. Thus, subsection (g) underscores the Legislature's view that damages pursuant to subsection (e)(2) must cease with the

However, the same conclusion is reached applying subsection (f) alone. The legislature outlined two mutually exclusive measurable periods in subsection (f): (1) the date the child would have reached age 20 or 23; or (2) the date of the child's last surviving parent's death; *whichever first occurs.* There is no way that subsection (f) can be read to provide a special measuring period in non-parental guardianship situations. Subsection (g) adds nothing in this regard.

Second, the court suggested that the language in subsection (g) could emphasize merely that damages for the loss of a child's love and companionship were limited "only" to child death cases—not child injury cases. *Id.* However, the introductory sentence to subsection (e) clearly indicates that the identified recoverable damages are for child death cases only. *See* Ind.Code § 34–23–2–1(e) ("In an action to recover for the *death of a child,* . . .") (emphasis added). The notion that recoverable damages apply only to child death cases is made clear in subsection (e); again, employing this rationale would render subsection (g) superfluous.

■ In construing a statute, this Court will presume that the legislature did not enact a useless provision. *Hinshaw,* 611 N.E.2d at 638 (citing *State ex rel. Hatcher v. Lake Superior Court,* 500 N.E.2d 737, 739 (Ind.1986)). The illustrations offered by the court in *Herriman* would contradict this canon of statutory construction.

■ The other established rule of statutory construction that supports our conclusion holds that where provisions of a statute conflict, the specific provision takes priority over the general provision. *Houtchens v. Lane,* 246 Ind. 540, 545–46, 206 N.E.2d 131, 134 (Ind.1965) (citations omitted); *Ezzell v. State,* 246 Ind. 268, 271, 205 N.E.2d 145, 146 (Ind. 1965). The provisions in Ind.Code § 34–23–

2–1(f) and (g) can be categorized as general and specific.

The measuring period for calculating damages in subsection (f) is more general (cross-referencing "this section") than subsection (g), which cross-references subsection (e)(2). As the latter is the more specific provision, that provision controls.

### C

As noted several times *supra, Herriman* concluded that the legislature intended to limit recoverable damages for the loss of a child's love and companionship to the age of majority. In support of this conclusion, the court relied on *Ed Wiersma Trucking Co. v. Pfaff,* 643 N.E.2d 909 (Ind.Ct.App.1994), *affirmed and adopted,* 678 N.E.2d 110 (Ind. 1997), and *King v. King,* 610 N.E.2d 259 (Ind.Ct.App.1993).[16] We believe the reliance on *Wiersma* merits discussion.

In *Wiersma,* the Indiana Court of Appeals determined that the pecuniary loss rule included the recovery for the loss of love, care and affection under the Indiana Wrongful Death Act by a dependent next of kin. *Wiersma,* 643 N.E.2d at 913. *See also* Ind. Code § 34–23–1–1 ("Death from wrongful act or omission"). "Pecuniary loss is the foundation of a wrongful death action, and the damages are limited to the pecuniary loss suffered by those for whose benefit the action may be maintained." *Wiersma,* 643 N.E.2d at 911 (citations omitted). Consequently, *Wiersma* stands for the proposition that the pecuniary loss rule has been expanded in Indiana to include the recovery for loss of love and companionship in wrongful death actions involving deceased adults. *Id.* at 913; *Herriman,* 887 F.Supp. at 1155; *Necessary v. Inter–State Towing,* 697 N.E.2d 73, 76 (Ind.Ct.App.1998); *Luider v. Skaggs,* 693 N.E.2d 593, 597 (Ind.Ct.App.1998), *trans. denied; Chamberlain v. Parks,* 692 N.E.2d

death of the parents no matter who asserts the loss." *Herriman,* 887 F.Supp. at 1157.

**16.** Robinson also relies on *King* for the proposition that the recovery for loss of a child's love and companionship should be limited to the age of majority. *King,* 610 N.E.2d at 264 n. 6. *See also* Brief of Appellant at 18–19. However, as Robinson points out, the conclusions reached in

*King* are *dicta* and not binding. *Koske v. Townsend Eng'g Co.,* 551 N.E.2d 437, 443 (Ind.1990) (citing *Szilagyi v. State ex rel. La Porte Community Sch. Corp.,* 249 Ind. 400, 410, 233 N.E.2d 181, 183 (Ind.1968)) ("In appellate opinions, statements not necessary in the determination of the issues presented are *obiter dictum.* They are not binding and do not become the law.")

1380, 1383 (Ind.Ct.App.1998), *reh'g denied, trans. denied.*

The court in *Herriman,* however, relies on *Wiersma* to conclude that in an action under the Child Wrongful Death Act, "the proper measure of damages [is] the value of the child's services from the *time of injury until the child would have attained majority.*" *Wiersma,* 643 N.E.2d at 912 (citations omitted) (emphasis added). This reliance is misplaced. The court in *Wiersma* was not presented with any question under the Child Wrongful Death Act. The court's sole issue in *Wiersma* was whether a dependent next of kin could recover damages for loss of love, care and affection in a wrongful death action involving a deceased adult. *Wiersma,* and our affirmation and adoption of it, does not stand as any sort of precedent on the question of the measuring period for calculating damages in child wrongful death cases.

### Conclusion

■ Having previously granted transfer, we now summarily affirm the opinion of the Court of Appeals pursuant to Ind. Appellate Rule 11(B)(3) and find that the Indiana Child Wrongful Death Act, specifically Ind.Code § 34–23–2–1(f) and (g), permits the recovery of damages for the loss of a child's love and companionship with respect to the time from the death of the child until the death of the child's last surviving parent.

The trial court and Court of Appeals are affirmed and this cause is remanded for further proceedings.

SHEPARD, C.J., and DICKSON and SELBY, JJ., concur.

BOEHM, J., dissents with opinion.

BOEHM, Justice, dissenting.

The majority's careful analysis of the language of the statute and its legislative history leads inescapably to the conclusion that the statute is internally inconsistent, and somebody failed at the drafting stage to consider all of the implications of subsection (f) for other provisions of the statute. The rest is guesswork. The majority offers one plausible explanation—that the addition of psychiatric costs, etc., to the recoverable items was accompanied by a desire to limit these items to age twenty-three as a political compromise, and the draftsperson simply overlooked the apparent inconsistency with subsection (g). I find it equally plausible that some late night drafter intended to embody a compromise that left in the new items of recoverable damage, but limited all items to age twenty-three.

I cannot find anything in the statute that resolves this inconsistency or that points in the direction of resolving this dispute in favor of either party. However, it seems to me that the internal logic of the statute is more offended by the majority's result than by a literal reading of subsection (f) to limit all damages under "this section" to age twenty-three for students and age twenty for others. I reach this conclusion, fortified by some legal maxims, including strict construction of the statute in derogation of the common law, but in the face of those cited by the majority, including the specific governs over the general. The result of the majority's view, however is that the legislature intended the following results:

1) Economic loss from the loss of the child's services and out of pocket expenses for the survivors' psychiatric care are not recoverable after age twenty three, but loss of love and affection is recoverable beyond that time; and

2) A child who is killed at age 23 and one day is wholly not compensable, but loss of love and affection from the death of that child's twin that occurs two days earlier is compensable for the life of the parents.

It seems to me that these results are sufficiently bizarre that it is unlikely that the legislature would have approved them. I would conclude that subsection (g) was inadvertently left in the statute when subsection (f) was expanded to cover all damages recoverable under "this section." The issue is purely a matter of legislative policy, and the majority may well be correct in divining the legislature's intentions. If so, this decision will stand. If not, the General Assembly can fix it.